# Exhibit A

**MALK & POGO LAW GROUP, LLP**
Valter Malkhasyan (SBN 348491)
*valter@malkpogolaw.com*
Erik Pogosyan (SBN 345650)
erik@malkpogolaw.com
1241 S. Glendale Ave, Suite 204
Glendale, CA 91205
Tel: (818) 484-5204
Fax: (818) 824-5144

*Counsel for Plaintiff and the Proposed Class*

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/30/2025 1:03 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By G. Cordon, Deputy Clerk

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| VIGEN TOVMASYAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TARGET CORPORATION, a corporation, and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 25STCV02620<br><br><u>CLASS ACTION COMPLAINT</u><br><br>1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*<br><br>2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*<br><br>3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. Seq.*<br><br>4. BREACH OF EXPRESS WARRANTY<br><br>5. UNJUST ENRICHMENT<br><br>6. COMMON LAW FRAUD<br><br>7. INTENTIONAL MISREPRESENTATION<br><br>8. NEGLIGENT MISREPRESENTATION<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Vigen Tovmasyan ("Plaintiff" or "Tovmasyan"), each individually and each on behalf of all others similarly situated, bring this class action complaint against Target Corporation

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

("Defendant" and/or "Target") and Does 1 through 20, inclusive (collectively referred to herein as "Defendants") and alleges as follows:

## **SUMMARY OF THE ACTION**

1.      This is a class action lawsuit brought on behalf of all purchasers of Good and Gather "No Preservatives" Dip Products (the **"Products"**), sold online and at retail locations throughout California and the United States.

2.      Defendants falsely and deceptively advertise the Products as containing "No Artificial Colors, Flavors, or **Preservatives**" ("**Challenged Representation**"). However, contrary to the Products' Challenged Representation, as explained in detail below, the Products actually contain citric acid — a preservative ingredient used in food products.

3.      Through falsely, misleadingly, and deceptively labeling the Products, Defendants seek to take advantage of consumers' desire for a truly premium products that are free from preservatives. Yet, Defendants do so at the expense of unwitting consumers, as well as Defendants' lawfully acting competitors, over whom Defendants maintain an unfair competitive advantage.

4.      Plaintiff brings this action individually and in a representative capacity on behalf of similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined infra), for dual primary objectives: ***One***, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium Plaintiff and consumers overpaid for Products that should, but fails to, comport with the Challenged Representation (which may include, for example, damages, restitution, disgorgement, and/or any applicable penalties, fines, or punitive/exemplary damages) solely to the extent that the causes of action pled herein permit such recovery. ***Two***, Plaintiff seeks, on his individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendants' unlawful manufacture, marketing, and sale of the Products with the Challenged Representation to avoid or mitigate the risk of deceiving the public into believing that the Products conform to the Challenged Representation, by requiring Defendants to change their business practices, which may include one or more of the following: removal or modification of the Challenged Representation from the Product's labels, removal or modification of the Challenged Representation from the Product's advertising, modification of the

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1    Product's formulation be it a change in ingredients or its sourcing and manufacturing processes,

2    and/or discontinuance of the Product's manufacture, marketing, and/or sale.

3        5.    True and correct copies of the Products' labels are pictured below.

4

5    **Good & Gather Spinach Artichoke Dip**

6

7

8

9

10

11

12

13

14    

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1

**<u>Good & Gather Cranberry Jalapeno Dip</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

1

**Good & Gather Taco Dip**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



CLASS ACTION COMPLAINT

**Good & Gather Tzatziki Yogurt Dip**



6.    Consumers are deceived by Defendants' labeling and advertising of the Products as containing "No Artificial Colors, Flavors, or Preservatives" believing that they are purchasing a preservative-free Product. Consumers rely on Defendants' labeling and advertising of the Products as containing "no preservatives" to be truthful and would not know that the Products actually contains a preservative.

7.    Reasonable consumers such as Plaintiff do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendants' advertised "No Artificial Colors, Flavors, or Preservatives."

8.    Defendants know that consumers are willing to pay more for natural, healthy products, and advertises the Products with the intention that consumers rely on the representation made on the front of the Products packaging that the Products have "No Artificial Colors, Flavors, or Preservatives."

CLASS ACTION COMPLAINT

9.     By falsely labeling the Products as having "No Artificial Colors, Flavors, or Preservatives" Defendants have profited from consumers' preference for food products that are healthier or made free of preservatives.

## PARTIES

10.    **Plaintiff:** Plaintiff is, and at all times relevant hereto was, a citizen of California. Plaintiff purchased various flavors of the Products at different times during the Class Period, and most recently, he purchased the Spinach Artichoke Dip from a Target store in Los Angeles, California, in September of 2024. In making his purchase, Plaintiff relied upon Defendants' labeling and advertising claims, namely, the Challenged Representation label clearly printed on the front of the Products. These claims were prepared and approved by Defendants and their agents and disseminated statewide and nationwide, to encourage consumers to purchase the Products. If Plaintiff had known that the Products contained a preservative, then Plaintiff would not have purchased the Products, or he would have purchased it at a substantially lower price.

11.    **Plaintiff's Future Harm:** Plaintiff would like to purchase the Products again only if he can be sure that Defendants are compliant with the state consumer protection laws. Plaintiff continues to see Defendants' Products in stores available for purchase, and desires to purchase it again if the representation regarding the Challenged Representation was in fact true. Since Plaintiff would like to purchase the Products again to obtain a food product that, as advertised, is truly preservative free, Plaintiff would purchase it again in the future—despite the fact that it was once marred by false advertising or labeling—as Plaintiff would reasonably, but incorrectly, assume the Products were improved (no longer contains preservative ingredients). In that regard, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of food products, such as the Products. Neither Plaintiff, nor reasonable consumers, have the requisite knowledge to accurately differentiate between ingredients that are "preservatives" or not. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendants fixed the formulation of the Products such that Plaintiff may buy it again, believing it to no longer be falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Challenged Representation. Based on information and belief, the labeling of the Product purchased by Plaintiff is typical of the labeling of the Products purchased by members of the class.

12.    **Defendant**. Target Corporation is a Minnesota corporation that maintains its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products. Target directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.

13.    The true names and capacities, whether individual, corporate, associate, or otherwise of certain manufacturers, distributors, and/or their alter egos sued herein as DOES 1 through 20 inclusive are presently unknown to Plaintiff who therefore sues these individuals and/or entities by fictitious names. Plaintiff will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and based thereon alleges that DOES 1 through 20 were authorized to do and did business in Los Angeles County. Plaintiff is further informed and believe and based thereon allege that DOES 1 through 20 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and consequences hereinafter set forth below.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, § 10, because this case is a cause not given by statute to other trial courts.

15.    Plaintiff has standing to bring this action pursuant to Business & Professions Code § 17200, *et seq*.

16.    Venue is proper in this Court because the Plaintiff purchased the Products in Los Angeles County. Defendants receive substantial compensation from sales in Los Angeles County, and Defendants made numerous misrepresentations which had a substantial effect in Los Angeles County, including, but not limited to, label, point of purchase displays, and internet advertisements.

17.    Upon information and belief, said misrepresentations originated and/or emanated from the State of California.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

8

18.    Defendants and other out-of-state participants can be brought before this Court pursuant to the provisions of Code of Civil Procedure § 395.5.

19.    Defendants are subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendants and California. Defendants are authorized to do and are doing business in Los Angeles, California.

## FACTUAL ALLEGATIONS

### A. Citric Acid

20.    Defendants advertise and display on the front labels of each of the Products that they contain "No Artificial Colors, Flavors, or Preservatives" thereby misleading reasonable consumers into believing that the Products are free from artificial preservatives. However, the Products contain a well-known and well-documented preservative, citric acid.

21.    Citric acid acts as a preservative when added to food products, including the Products at issue. Citric acid acts as a preservative in the Products regardless of the subjective purpose or intent for why Defendants added citric acid to the Products because citric acid acts as a preservative *even if* very low levels are contained in the Product.[1]

22.    The Food and Drug Administration ("FDA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

23.    The FDA classifies and identifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like citric acid, including, in food.[2]

///

///

---

[1] *See* Doores, S., 1993. Organic acids. In: Davidson, P.M., Branen, A.L. (Eds.), *Antimicrobials in Foods.* Marcel Dekker, Inc., New York, pp. 95-136.
http://base.dnsgb.com. ua/files/book/ Agriculture/Foods/Antimicrobials-in-Food. pdf

[2] *Overview of Food Ingredients, Additives & Colors, FOOD AND DRUG ADMINISTRATION, available                at*
https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors.

9

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

## Types of Food Ingredients

The following summary lists the types of common food ingredients, why they are used, and some examples of the names that can be found on product labels. Some additives are used for more than one purpose.

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

24.    Citric acid's classification as a preservative is further confirmed by a Warning Letter sent by the FDA to the manufacturer of Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites," in which the FDA proclaimed the "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of Section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and *citric acid* but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."[3]

25.    The Agricultural Marketing Service of the United States Department of Agriculture ("USDA") has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[4]

26.    The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "[s]ome common chemical preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[5]

---

[3]  *See* FDA label compliance website, https://www.fdalabelcompliance.com/letters/ucm228663.
[4]  Citric Acid and Salts, UNITED STATES DEPARTMENT OF AGRICULTURE, available athttps://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.
[5]  FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, available athttps://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

27. Academic journals have also noted the use of citric acid as a preservative.[6] Indeed, "Citric acid acts as a preservative in many processed foods, keeping them fresh. It does this by slowing or helping prevent the formation of bacteria, mold, yeast, and fungus."[7] "Today, citric acid is one of the most common and widely-used preservatives in the world[.]"[8]

28. The Encyclopedia Britanica also classifies citric acid as a preservative because it has antioxidant properties.[9]

## B. **Defendants' Use of Citric Acid**

29. Defendants use a synthetic form of citric acid that is derived from heavy chemical processing.[10] The citric acid used in the Products is commercially produced and is manufactured using a type of black mold called *Aspergillus niger*.[11] Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendants use in the Products from *aspergillus niger* fermentation liquor. *See* 21 C.F.R § 173.280. The citric acid that Defendants use in the Products is produced through chemical solvent extraction and contains residues of those chemical solvents.

30. An article published in the *Toxicology Reports Journal* explains that citric acid produced through aspergillus niger fermentation is artificial: Citric acid naturally exists in fruits and vegetables. However, it is not the naturally occurring citric acid, but the manufactured

---

[6] K. Kirimura, et al., Citric Acid, COMPREHENSIVE BIOTECHNOLOGY (SECOND EDITION)(2011), available at https://www.sciencedirect.com/science/article/abs/pii/B9780080885049001690?via%3Dihub; K.M.S. Islam, Use of citric acid in broiler diets, WORLD'S POULTRY SCIENCE JOURNALVOL.68,ISSUE 1(Feb. 21, 2012), available athttps://www.cambridge.org/core/journals/world-s-poultry-science-journal/article/abs/use-of-citric-acid-in-broiler-diets/DA15C2C1F90667525BF2414DF3BFF646 ( "Citric Acid (CA) is a weak organic acid which is a natural preservative and can add an acidic or sour taste to foods and soft drinks.").

[7] What is citric acid, and what is it used for?, MEDICAL NEWS TODAY (July 23, 2021), available athttps://www.medicalnewstoday.com/articles/citric-acid

[8] Citric Acid: One of the Most Important Preservatives in The World, FBCINDUSTRIES,INC. (Feb. 5, 2019), available athttps://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/

[9] Preservatives, BRITANICA, available at https://www.britannica.com/topic/food-additive/Preservatives#ref502211

[10] A. Hesham, Y. Mostafa & L. Al-Sharqi, Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates, 48 MYCOBIOLOGY 122, 123 (2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/ (emphasis added).

[11] *Id*; Pau Loke Show,et al., Overview of citric acid production from Aspergillus niger, FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015),available athttps://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

11

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

citric acid (MCA) that is used extensively as a food additive. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergilus niger* is a known allergen.[12]

31.     The Food and Drug Administration ("FDA") has also sent warning letters to companies stating that certain products labeled as "natural" are misbranded because they contain **artificial** citric acid as an ingredient. For example, on August 29, 2001, the FDA sent Hirzel Canning Company ("Hirzel") a warning letter regarding its canned tomato products. With respect to Hirzel's Chopped Tomatoes Onions & Garlic and Chopped Mexican Tomatoes & Jalapenos, the FDA stated that these products could not bear the "All Natural" claim on the label because the products contained a synthetic ingredient, citric acid.

32.     Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[13] The *Toxicology Reports Journal* article explains that "the potential presence of impurities or fragments from the Aspergillus niger in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested."[14]

### C. Defendants Mislead Plaintiff and Reasonable Consumers, Who Relied on the Material and False Advertising Claims to their Detriment

33.     **Materiality.** The Challenged Representation is material to reasonable consumers, including Plaintiff, in deciding to buy the Products. Specifically, the composition of the Products containing no preservatives—is important to consumers and motivates them to buy the Product.

34.     **Reliance**. The Class, including Plaintiff, reasonably relied on the Challenged Representation in deciding to purchase the Products.

35.     **Consumers Lack Knowledge of Falsity**. Consumers, including Plaintiff, do not know, and have no reason to know, at the time of purchase, that the Products' Challenged Representation is false, misleading, deceptive, and unlawful. That is because consumers, including

---

[12] Iliana E. Sweis, et al., *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states:  A series of four case reports*, TOXICOLOGY REP.  5:808-812 (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/Case 2:24-cv-03721-MWF-AJR
[13] *Id*.
[14] *Id*.

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Plaintiff, do not work for Defendants and therefore have no personal knowledge of the actual ingredients used to make the Products or how those ingredients are made, including whether preservative ingredients are included. Additionally, average consumers do not have the specialized knowledge of a chemist or product-developer. Thus, reasonable consumers, like Plaintiff, cannot discern from the Products' ingredient disclosures whether certain ingredients, are preservatives. Furthermore, reasonable consumers, like Plaintiff, do not ordinarily review information on the back or side panels of a consumer product's packaging, like the Products' packaging, particularly dense, fine-print ingredient disclosures, or review such information on websites. Indeed, studies show that only approximately 7.7% to 11.6% of people even look at the side or back labels of consumer goods, such as ingredient lists, before they buy it.[15]

---

[15] Grunert, Klaus, et. al, *Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK*, 55 Appetite 177, at 179-181 (2010) available at https://reader.elsevier.com/reader/sd/pii/S0195666310003661?token=95E4146C1BB7D7A7C9A4 87F22F0B445BD44499550086E04870765EBE116ED32DBFE3795E60B69C75831563CD1BC6 655A&originRegion=us-east-1&originCreation=20220720162546 (consumer purchasing behavior study using in-store observation and interview data collection methodology to realistically estimate the degree consumers use nutritional information (found on side/back panels of food product labels and packaging), finding: (1) only **11.6% of respondents**, who looked at a product and placed it in their shopping cart, **were actually observed looking at the side/back panels of its packaging or labels** (panels other than the front panel) before placing it in the cart; (2) of those who looked at the side/back panels, only 31.8% looked at it the product "in detail" (i.e., 3.7% of respondents who looked at the product, looked at side/back panels in detail)); and (3) the **respondents self-reported frequency of reviewing side/back panels** (for nutritional information) **is overreported by 50%** when the in-store interview data and observational data are compared); Grunert, Klaus, et. al, *Use and understanding of nutrition information on food labels in six European countries*, 18(3) Journal of Public Health 261, 261, 263, 266 (2010), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection methodology to evaluate whether people look at food labels before buying them, where they looked, and how long they looked, finding: (1) respondents spent, on average, approximately 35 seconds, per product, on products they bought; and (2) 62.6% of respondents looked at the front packaging, and **only 7.7% looked elsewhere (side/back panels) on the packaging**, for products they bought); Benn, Yael, et al., *What information do consumers consider and how do they look for it, when shopping for groceries online*, 89 Appetite 265, 265, 270 (2015), available at https://www.sciencedirect.com/science/article/pii/S0195666315000422#bib0060 (last accessed October 31, 2024) (consumer purchasing behavior study using online eye-movement tracking and recordation, finding: (1) once on the product webpages, respondents tend to look at the pictures of products, rather than examine detailed product information; and (2) by comparison to pictures of products where 13.83-19.07% of respondents fixated, far less fixated on subsidiary information: 4.17% of respondents looked at nutrition information, 3.30% ingredients, 2.97% allergy information, and 0.09% recycling information for example).

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

36. The average consumer spends generally not more than 13 seconds to make an in-store purchasing decision.[16] That decision is heavily based upon the product's front labeling because consumers do not have time to review and read every portion of the label and inspect in detail the rear label which depicts in small print the ingredients.

a. **Defendants' Knowledge**. Defendants knew, or should have known, that the Challenged Representation was false, misleading, deceptive, and unlawful, at the time that Defendants manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representation to Plaintiff and the Class. Defendants intentionally and deliberately used the Challenged Representation, alongside their massive marketing campaign and brand strategy, to cause Plaintiff and similarly situated consumers to buy the Products believing that the Challenged Representation is true. **Knowledge of Falsity.** Defendants marketed the Products with the Challenged Representation, but Defendants opted to formulate and manufacture them in a manner that does not conform to this representation. Specifically, Defendants advertised and labeled the Products with the Challenged Representation, but, instead of using only non-preservative ingredients, Defendants chose to make the Products with citric acid, a well-documented preservative.

b. **Knowledge of Reasonable Consumers' Perception.** Defendants knew, or should have known, that the Challenged Representation would lead reasonable consumers into believing that the Products were preservative free—i.e., the Products do not contain preservative ingredients. Not only have Defendants labeled the Products with the Challenged Representation and executed a long-standing brand strategy and advertising campaign to identify the Products with the Challenged Representation, but Defendants also have an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendants were statutorily obligated to consider whether the Challenged Representation, be it in isolation or conjunction with its marketing campaign, would mislead reasonable consumers into believing that the Products were made of only non-preservative ingredients. Thus, Defendants either knew the Challenged Representation was misleading before they marketed the Products to the Class, including Plaintiff, or Defendants would have known that it was deceptive had Defendants complied with its statutory obligations.

c. **Knowledge of Materiality.** Defendants knew or should have known that the Challenged Representation is material to consumers. *First*, manufacturers and marketers, like Defendants, generally reserve the front primary display panel of labels on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representation on the Products' labels

---

[16] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 13, 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-window/ (citing *Shopping Takes Only Seconds… In-Store and Online*, EHRENBERG-BASS INSTITUTE OF MARKETING SCIENCE (2015)) (last visited 11/04/2024).

CLASS ACTION COMPLAINT

demonstrate Defendants' awareness of its importance to consumers and Defendants' understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representation. ***Second***, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Products. Here, the constant, unwavering use of the Challenged Representation on the Products, advertisements, and throughout Defendants' marketing campaign, evidence Defendants' awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendants' intent to convince consumers that the Products conform to the Challenged Representation and, ultimately, drive sales.

d. **Defendants Continued Deception, Despite Their Knowledge.** Defendants, as the manufacturers and marketers of the Products, had exclusive control over the Challenged Representation's inclusion on the Products' labels, and advertisements—i.e., Defendants readily and easily could have stopped using the Challenged Representation to sell the Products. However, despite Defendants' knowledge of the Challenged Representation's falsity, and Defendants' knowledge that consumers reasonably rely on the Challenged Representation in deciding to buy the Products, Defendants deliberately chose to market the Products with the Challenged Representation thereby misleading consumers into buying or otherwise overpaying for the Products. Thus, Defendants knew, or should have known, at all relevant times, that the Challenged Representation misleads reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendants falsely advertised and warranted. Indeed, notwithstanding Plaintiff's demand to Defendants to stop misleading consumers with the Challenged Representation, Defendants have continued to market the Products using the Challenged Representation.

37.    By letter dated November 26, 2024, Plaintiff advised Defendants of their false and misleading claims pursuant to California Civil Code Section 1782, subdivision (a) regarding Defendants' use of citric acid – a preservative ingredient. Plaintiff has provided Defendants with notice of their violations of the CLRA pursuant to Civil Code § 1782(a).

D.  **No Adequate Remedy at Law**

38.    **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.  Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b.  **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendants' overall unfair marketing scheme to promote and brand the Products with the Challenged Representation, across a multitude of media platforms, including the Product's labels, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representation. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representation and omission made on the type of products at issue).  Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiff (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).  Similarly, unjust enrichment/restitution is broader than breach of warranty.  For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution.  Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c.  **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendants continue to misrepresent the Products with the Challenged Representation. Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm— none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts.  Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' Challenged Representation is not true and providing accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature.  An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendants' future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Products sales, and quantities of past/future Product sales.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

## <u>CLASS ALLEGATIONS</u>

39.    **Class Definition**. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated, and as members of the Classes defined as follows:

> All persons or entities that, within the applicable statute of limitations periods, purchased the Products in the United States, displaying the Challenged Representation on the Products' labels, for purposes other than resale ("**Nationwide Class**"); and

> All persons or entities that, within four years prior to the filing of this Complaint through present, purchased the Products in California, displaying the Challenged Representation on the Products' labels, for purposes other than resale ("**California Subclass**")

("Nationwide Class" and "California Subclass," collectively, "**Class**").

40.    **Class Definition Exclusions.** Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

41.    **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

42.     **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

43.     **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.     Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.     Whether Defendants' conduct of advertising and selling the Products as being preservative free, creating the reasonable assumption that the Products do not contain any preservative ingredients, when the Products contains citric acid, constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*

c.     Whether Defendants used deceptive representation in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

d.     Whether Defendants represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

e.     Whether Defendants advertised the Products with intent not to sell it as advertised in violation of Civil Code section 1750, *et seq.*;

f.     Whether Defendants' labeling and advertising of the Products is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

g.     Whether Defendants knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.     Whether Defendants' conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*

i.     Whether Defendants' conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*

j.     Whether Defendants' conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.     Whether Plaintiff and the Class paid more money for the Products than they actually received;

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

l.   How much more money Plaintiff and the Class paid for the Products than they actually received;

m.   Whether Defendants' conduct constitutes breach of warranty;

n.   Whether Plaintiff and the Class are entitled to injunctive relief; and

o.   Whether Defendants were unjustly enriched by its unlawful conduct.

44.   **Typicality**: Plaintiff's claims are typical of the claims of the Class Members he seeks to represent because Plaintiff, like the Class Members, purchased Defendants' misleading and deceptive Products. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

45.   **Adequacy**: Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

46.   **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons

a.   The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.   Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy its ill-gotten gains;

c.   Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

CLASS ACTION COMPLAINT

d.    When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

47.    **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

48.    **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

49.    **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## <u>COUNT ONE</u>

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### (*On Behalf of the California Subclass*)

50.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

51.    **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

52.    **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

53. **False Advertising Claims.** Defendants, in their labeling and advertising of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Challenged Representation (i.e., that the Products contain no preservatives) — despite the fact the Products contain citric acid, a well-documented preservative. Such claim and omission appear on the front labels of the Products, which are sold at retail stores, point-of-purchase displays, and online.

54. **Defendants' Deliberately False and Fraudulent Marketing Scheme.** Defendants do not have any reasonable basis for the claims about the Products made in Defendants' advertising and on Defendants' labeling because the Products contain citric acid, a well-documented preservative. Defendants knew and know that the Products contain citric acid, yet Defendants intentionally advertise and market the Products to cause reasonable consumers to believe that the Products are preservative free.

55. **False Advertising Claims Cause Purchase of Product.** Defendants' labeling and advertising of the Products led to, and continue to lead to, reasonable consumers, including Plaintiff, believing that the Products were preservative free, to the exclusion of preservative ingredients.

56. **Injury In Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendants' Challenged Representation—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from Defendants.

57. **Conduct Violates the UCL.** Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendants' use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

58.    **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendants failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

59.    **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendants voluntarily alter its conduct or Defendants are otherwise ordered to do so.

60.    **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendants to disclose such misrepresentation, and to preclude Defendants' failure to disclose the existence and significance of said misrepresentation.

61.    **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

62.    **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants'

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for a Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

### **"Unfair" Prong**

63.     **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

64.     **Injury.** Defendants' actions of mislabeling the Products with the Challenged Representation do not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive a product commensurate with their reasonable expectations, overpay for the Products, and receive a product of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendants' deceptive labeling and/or advertising of the Products. Accordingly, the injuries caused by Defendants' deceptive labeling and advertising outweigh any benefits.

65.     **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the Defendants' conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

66. **No Utility.** Here, Defendants' conduct of labeling the Products as containing "No Preservatives"—when the Products contains citric acid, has no utility and financially harms purchasers. Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

67. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

68. **Unfair Conduct.** Defendants' labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendants knew or should have known of their unfair conduct. Defendants' misrepresentation constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

69. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Challenged Representation.

70. **Defendants' Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

71. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practices of labeling the Products with the Challenged Representation.

72. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that were supposedly preservative free, but instead purchased Products that contain citric acid, a well-documented preservative. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

**"Fraudulent" Prong**

73. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

74. **Fraudulent & Material Challenged Representation.** Defendants used the Challenged Representation with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representation is false, and Defendants knew or should have known of its falsity. The Challenged Representation is likely to deceive consumers into purchasing the Products because it is material to the average, ordinary, and reasonable consumer.

75. **Fraudulent Business Practice.** As alleged herein, the misrepresentation by Defendants constitutes a fraudulent business practice in violation of California Business & Professions Code Section 17200.

76. **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representation to their detriment in that they purchased the Products.

77. **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Challenged Representation. Alternatively, they could have refrained from including citric acid as an ingredient within the Products.

78. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

79. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling the Products with the Challenged Representation.

80. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for a Products that was supposedly contained no preservatives, but instead purchased Products that contain citric acid, a well-documented preservative. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**"Unlawful" Prong**

81.    **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

82.    **Violations of CLRA and FAL.** Defendants' labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

83.    **Additional Violations.** Defendants' conduct in making the false representation described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendants' misrepresentation of material facts, as set forth herein, violates California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

84.    **Unlawful Conduct.** Defendants' labeling and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendants knew or should have known of its unlawful conduct

85.    **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein.

26
CLASS ACTION COMPLAINT

Defendants could have refrained from labeling the Products with the Challenged Representation and/or omitting the use of preservative ingredients within the Products.

86. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

87. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of false and deceptive advertising of the Product.

88. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for a Products that was supposedly preservative free, but instead purchased Products that contain citric acid – a preservative ingredient. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT TWO

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (*On Behalf of the California Subclass*)

89. **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

90. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

91. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

92. **False & Material Challenged Representation Disseminated to Public.** Defendants violated section 17500 when they advertised and marketed the Products through the unfair,

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

27

deceptive, untrue, and misleading Challenged Representation disseminated to the public through the Products' labeling, marketing, and advertising.  This representation was false because the Products does not conform to it. The representation was material because it is likely to mislead a reasonable consumer into purchasing the Products.

93.    **Knowledge.** In making and disseminating the representation alleged herein, Defendants knew or should have known that the representation was untrue or misleading, and acted in violation of § 17500.

94.    **Intent to Sell.** Defendants' Challenged Representation was specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

95.    **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct prevent ongoing and future harm that will result.

96.    **Punitive Damages.** Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for a Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

### COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

97.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

98.    **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

99.    **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

100.    **Goods/Services.** The Products are a "good," as defined by the CLRA in California Civil Code §1761(a).

101.    **Defendants.** Defendants are a "person," as defined by the CLRA in California Civil Code §1761(c).

102.    **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

103.    **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

104.    **Violations of the CLRA.** Defendants violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representation.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [it] do[es] not have."

b. Section 1770(a)(7) by representing that the Products "[is of a particular standard, quality, or grade . . . [when] [it is] of another."

c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell [it] as advertised."

105. **Knowledge.** Defendants' uniform and material representation regarding the Products was likely to deceive, and Defendants knew or should have known that their representation was untrue and misleading.

106. **Malicious.** Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

107. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendants suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased it on different terms had they known the truth.

108. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendants' violations of the CLRA because they relied on the Challenged Representation in deciding to purchase the Products. The Challenged Representation was a substantial factor. The Challenged Representation was material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

109. **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code, section 1782, more than thirty days prior to the filing of this complaint, on or around November 26 of 2024, Plaintiff's counsel, acting on behalf all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant Target Corporation at its headquarters and principal place of business (1000 Nicollet Mall Minneapolis, MN 55403), and its

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

registered agent addresses (1010 Dale St. N St. Paul, MN 55117 and 330 N. Brand Blvd., Suite 700 Glendale CA 91203).

110.  **Causation/Damages.**  As a direct and proximate result of Defendants' misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

111.  **Injunction.** Given that Defendants' conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendants' violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendants' false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendants' unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise requires Defendants to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendants' deceptive labeling of the Products with the Challenged Representation

112.  **Punitive Damages.** Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people

would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants. Accordingly, Plaintiff seeks an award of punitive damages against Defendants.

## COUNT FOUR

### Breach of Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

113. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

114. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

115. **Express Warranty.** By advertising and selling the Products at issue, Defendants made promises and affirmations of fact on the Products' labeling, and through their marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendants. Defendants purport, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conforms to the Challenged Representation.

116. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendants, merchants of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' labeling, and through their marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendants—to wit, that the Products, among other things, conform to the Challenged Representation.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

117. **Breach of Warranty.** Contrary to Defendants' express warranties, the Products do not conform to the Challenged Representation and, therefore, Defendants breached their warranties about the Products and its qualities.

118. **Causation/Remedies.** As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

119. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

///

**COUNT FIVE**

**Unjust Enrichment/Restitution**

***(On Behalf of the Nationwide Class and California Subclass)***

120.   **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

121.   **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

122.   **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Products.

123.   **Defendants' Knowledge of Conferred Benefit.** Defendants had knowledge of such benefit and Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

124.   **Defendants' Unjust Receipt Through Deception.** Defendants' owing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent, misleading, and deceptive representation and omission.

125.   **Causation/Damages.** As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendants' conduct to prevent ongoing and future harm that will result.

126.   **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for a Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## COUNT SIX

### Common Law Fraud

### (*On Behalf of the Nationwide Class and California Subclass*)

127. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

128. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

129. Defendants have willfully, falsely, and knowingly labeled and marketed the Products with the Challenged Representation. However, the Products contain citric acid – a well documented preservative ingredient. Defendants have misrepresented the quality of ingredients contained in the Products.

130. Defendants' misrepresentations are and were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making his or her purchase decision), because they relate to the quality of food products purchased and consumed.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

35

131.    Defendants knew of, or showed reckless disregard for, the fact that the Products contained a preservative ingredient.

132.    Defendants intended for Plaintiff and the Class to rely on these representations, as evidenced by Defendants' intentional labeling and marketing of the Products with the Challenged Representation.

133.    Plaintiff and the Class have reasonably and detrimentally relied on Defendants' misrepresentations when purchasing the Products and, had they known the truth, they would not have purchased the Products or would have paid significantly less for the Products.

134.    Therefore, as a direct and proximate result of Defendants' fraud, Plaintiff and members of the Class have suffered injury in fact.

## COUNT SEVEN

### Intentional Misrepresentation

### (*On Behalf of the Nationwide Class and California Subclass*)

135.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

136.    **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

137.    Defendants have intentionally labeled and marketed the Products with the Challenged Representation. However, the Products contain numerous citric acid. Defendants have misrepresented the quality of ingredients contained in the Products.

138.    Defendants' misrepresentations regarding the Products are material to a reasonable consumer, as they relate to the quality of product received by consumers. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision.

139.    At all relevant times when such misrepresentations were made, Defendants knew or should have known that the representations were misleading.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

140.   Defendants intended for Plaintiff and the Class to rely on the front labeling and marketing of the Products', as evidenced by Defendants' intentional manufacturing, marketing, labeling, and selling of Products with preservative ingredients.

141.   Plaintiff and members of the Class reasonably and justifiably relied on Defendants' intentional misrepresentations when purchasing the Products, and had they known the truth, they would not have purchased the Products or would have purchased them at significantly lower prices

142.   As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff and members of the Class have suffered injury in fact.

## COUNT EIGHT

### Negligent Misrepresentation

### (*On Behalf of the Nationwide Class and California Subclass*)

143.   **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

144.   **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

145.   Defendants have negligently labeled and marketed the Products with the Challenged Representation. However, the Products contain citric acid. Defendants have misrepresented the quality of ingredients contained in the Products.

146.   Defendants' misrepresentations regarding the Products are material to a reasonable consumer, as they relate to the quality of product received by consumers. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision.

147.   At all relevant times when such misrepresentations were made, Defendants knew or should have known that the representations were misleading.

148.   Defendants intended for Plaintiff and the Class to rely on the front labeling and marketing of the Products', as evidenced by Defendants' intentional manufacturing, marketing, labeling, and selling of Products preservative ingredients.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

149. Plaintiff and members of the Class reasonably and justifiably relied on Defendants' intentional misrepresentations when purchasing the Products, and had they known the truth, they would not have purchased the Products or would have purchased them at significantly lower prices.

150. As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff and members of the Class have suffered injury in fact.

## **PRAYER FOR RELIEF**

151. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel, consistent with applicable law;

b. **Declaratory Relief:** For an order declaring that Defendants' conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendants to change their business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendants immediately cease and desist from selling the unlawful Products in violation of law; that enjoin Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendants to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendants' unlawful conduct; and/or that require Defendants to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

152. Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

**MALK & POGO LAW GROUP, LLP**

Valter Malkhasyan, Esq.
Erik Pogosyan, Esq.

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT