**MALK & POGO LAW GROUP, LLP**
Valter Malkhasyan (SBN 348491)
*valter@malkpogolaw.com*
Erik Pogosyan (SBN 345650)
*erik@malkpogolaw.com*
1241 S. Glendale Ave. Suite 204
Glendale, CA 91205
Tel: (818) 484-5204
Fax: (818) 824-5144

*Counsel for Plaintiff Vigen Tovmasyan and the Proposed Class*

Brent R. Owen (Bar No. 45068)
HAYNES AND BOONE, LLP
675 15th Street, Suite 2200
Denver, CO 80202
Tel: (310) 853-2777
Fax: (303) 382-6210
Brent.Owen@haynesboone.com
Admitted *Pro Hac Vice*

[ADDITIONAL COUNSEL FOR DEFENDANT ON THE SIGNATURE PAGE]

*Attorneys for Defendant Target Corporation, et al.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIGEN TOVMASYAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>TARGET CORPORATION, a corporation, and DOES 1-20, inclusive,<br><br>Defendant(s). | Case No. 2:25-cv-02314-MRA-KS<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  June 30, 2025<br>Time:  1:30 PM<br>Courtroom:  10B<br><br>Hon. Mónica Ramírez Almadani<br><br>Original Complaint: 01/30/2025<br>Removal: 03/14/2025<br>Motion to Dismiss: 3/21/2025<br>Answer: 05/16/2025<br>Final Pretrial Conference (Proposed): May 10, 2027 |

Plaintiff Vigen Tovmasyan ("Plaintiff") and Defendant Target Corporation, et al. ("Target") (collectively, the "Parties"), hereby submit this Joint Case Management Statement pursuant to Fed. R. Civ. P. 26(f), Civil Local Rule 26, and Order Setting Case Management Conference (Dkt. 13).

**1.) Statement of the Case**

<u>Plaintiff's Position</u>: In an effort to increase profits and gain an unfair advantage over its lawfully acting competitors, Defendant falsely and misleadingly labels a line of its Good and Gather "No Preservatives" Dip products on the front labels as containing "No Artificial Colors, Flavors, or **Preservatives**." Based on this labeling, reasonable consumers believe that the Products are devoid of any preservatives. However, Defendant concedes that its Products contain citric acid, an FDA classified preservative. Defendant claims that citric acid is used in the Products not for purposes of preservation, but for "other reasons." Plaintiff disagrees and believes that this argument is irrelevant.

The Target Good and Gather dip product line at issue includes the following: (1) Good & Gather Spinach Artichoke Dip; (2) Good & Gather Cranberry Jalapeno Dip; (3) Good & Gather Taco Dip; and (4) Good & Gather Tzatziki Yogurt Dip (collectively, the "Products").

<u>Defendant's Position</u>: Defendant sells the Good & Gather "No Preservatives" Dip Products. Defendant denies that its Products or the representations associated with same are false, deceptive, or misleading, or otherwise in violation of California or any other law. Indeed, the Products' labels indicate that the Products do not contain preservatives and include the ingredient citric acid, which is not used as a preservative in the Products. The Products' labels truthfully disclose the ingredients and nutritional contents of the Products.

Defendant disputes that class certification is appropriate in this matter and that Plaintiff is an appropriate class representative for either the California Class, the

Nationwide Class, or as it relates to consumers falling within in either definition as it relates to online purchases of the Products.

## 2.) Subject Matter Jurisdiction

<u>Parties' Position</u>: This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

## 3.) Legal Issues

<u>Plaintiff's Position</u>: Plaintiff bases the following causes of action on Defendant's falsely advertised and mislabeled Products: Violation of California Unfair Competition Law, codified at Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); Violation of California False Advertising Law, codified at Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"); Violation of California Consumers Legal Remedies Act, codified at Civ. Code §§ 1750, *et seq.* ("CLRA"). Plaintiff alleges that Defendant uses a synthetic form of citric acid that is derived from heavy chemical processing.[1] The citric acid used in the Products is commercially produced and is manufactured using a type of black mold called *Aspergillus niger*.[2] Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus* niger fermentation liquor. *See* 21 C.F.R § 173.280. The citric acid that Defendant uses in the Products is

---

[1] 0 A. Hesham, Y. Mostafa & L. Al-Sharqi, Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates, 48 MYCOBIOLOGY 122, 123 (2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/ (emphasis added).
[2] Id; Pau Loke Show, et al., Overview of citric acid production from Aspergillus niger, FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), available at https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

produced through chemical solvent extraction and contains residues of those chemical solvents.

An article published in the Toxicology Reports Journal explains that citric acid produced through aspergillus niger fermentation is artificial: Citric acid naturally exists in fruits and vegetables. However, it is not the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food additive. Approximately 99% of the world's production of MCA is carried out using the fungus Aspergillus niger since 1919. Aspergilus nigeris a known allergen.[3]

Despite labeling the front labels of the Products as "No Artificial Colors, Flavors, or **Preservatives,**" Defendant's Products contain a well-known and well-documented preservative, citric acid. Defendant does not label the Products as containing an ingredient that is a preservative.

Plaintiff seeks to certify a class under Fed. R. Civ. P. 23(b)(2) and (b)(3), regarding, but not limited to, the following legal issues:

a. Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code §§ 1750, *et seq*.;

b. Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code §§ 1750, *et seq*.;

c. Whether Defendant represented the Products as having characteristics or qualities that they do not have in violation of Civil Code §§ 1750, *et seq*.;

d. Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code §§ 1750, *et seq*.;

---

[3] Iliana E. Sweis, et al., Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports, TOXICOLOGY REP. 5:808-812 (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/Case 2:24-cv-03721-MWF-AJR

e. Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code §§ 17500, *et seq.*;

f. Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code §§ 17500, *et seq.*;

g. Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code §§ 17200, *et seq.*;

h. Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code §§ 17200, *et seq.*;

i. Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code §§ 17200, *et seq.*;

j. Whether Plaintiff and the class paid more money for the Products than they actually received; and

k. How much more money Plaintiff and the class paid for the Products than they actually received

Defendant's Position: Defendant maintains the Products' labels truthfully disclose the ingredients and nutritional contents of the Products and that citric acid, though a preservative in certain food products, is not used as a preservative in the Products.

Defendant disputes that class certification is appropriate in this matter and that Plaintiff is an appropriate class representative for either the California Class, the Nationwide Class, or as it relates to consumers falling within in either definition as it relates to online purchases of the Products.

**4.)   Parties, Evidence, etc.:**

Plaintiff's Position: Other than Plaintiff's interests, there are no persons, firms, partnerships, corporations (including parent corporations) or other entities known by

Plaintiff to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding; or (iii) any person or entity that is funding the prosecution of any claim or counterclaim.

The primary evidence Plaintiff anticipates will focus on Defendant's corporate officers responsible for advertising, marketing, and packaging of the Products, as well as officers overseeing sales, along with relevant sales documents, and Defendant's internal policies and procedures. However, at this early stage, Plaintiff is not yet able to identify the names of all percipient witnesses that might support Plaintiff's case. Plaintiff will identify those witnesses to the extent possible in his initial disclosures and will supplement those disclosures as necessary. Plaintiff is unable to identify all key documents but generally identify the following documents and information that might be relevant to the issues in this case:

1. **Product Labels and Packaging**: Copies of the Product's front label and packaging during the relevant time period, highlighting the false or misleading "no preservatives" and/or "no artificial preservatives" claims.
2. **Expert Testimony**: Testimony from industry experts in consumer behavior or advertising who can explain the impact of front-label claims on consumer purchasing decisions.
3. **Advertising and Marketing Materials**: Defendant's marketing materials, including advertisements, brochures, and online promotions, to show how the "no preservatives" and/or "no artificial preservatives" label was presented to consumers, and the public.
4. **Internal Communications**: Discovery of emails, memos, or internal communications discussing the Products' labeling, advertising strategies, or the decision to use "no preservatives" and/or "no artificial preservatives" claims on the front label.

5. **Product Formulation Records**: Documentation showing the ingredients used in the Products, with emphasis on the presence of preservative ingredients that contradict the front label "no preservatives" and/or "no artificial preservatives" claim.

6. **Sales and Consumer Data**: Sales data, including information about the sales of the Products during the period in which the misleading label was used, and consumer feedback or complaints regarding the labeling.

7. **Corporate Policies and Procedures**: Defendant's internal policies and procedures related to advertising, product labeling, and ingredient sourcing, to assess whether there were any guidelines for truthfulness in advertising.

8. **Regulatory Compliance Documents**: Any documentation showing the company's compliance (or lack thereof) with relevant advertising laws and regulations, such as the Federal Trade Commission ("FTC") guidelines on deceptive advertising.

9. **Contracts with Ingredient Suppliers**: Agreements or contracts with suppliers that show the nature of the ingredients used in the Products, which may reveal whether the "no preservatives" and/or "no artificial preservatives" label was justified.

10. **Competitor Labeling and Industry Standards**: A comparison of industry standards for labeling similar products as "no preservatives" and/or "no artificial preservatives" to demonstrate whether Defendant's practices deviated from the norm.

11. **Financial Records**: Financial records that indicate any marketing spend or revenue linked to the sale of the falsely labeled products, showing the financial impact of the misleading advertising.

Defendant's Position: Defendant disagrees that the primary evidence in this matter will center on the actions of Defendant's corporate officers. Rather, the primary evidence will be:

1. **Plaintiff's Alleged Reliance on the Products' "No Preservative" Representation:** Specifically, Defendant will inquire, through deposition and written discovery, into Plaintiff's purchasing practices of the Products and other consumer products, interpretations of representations on food labels, and other topics alleged in Plaintiff's complaint to address Plaintiff's theories that the Products' labels are deceptive, false, and/or misleading.

2. **Product Labels and Packaging**: Copies of the Product's front label and packaging during the relevant time period.

3. **Expert Testimony**: Testimony from industry experts in consumer behavior or advertising who can explain the considerations of reasonable consumers in the course of purchasing products and reasonable interpretations of food labels.

4. **Product Formulation Records**: Documentation showing the ingredients used in the Products, with emphasis on citric acid not being used as a preservative in the Products.

5. **Competitor Labeling and Industry Standards**: A comparison of industry standards for labeling similar products as "no preservatives" and/or "no artificial preservatives" to demonstrate that Defendant's practices do not deviate from the norm.

6. **Corporate Policies and Procedures**: Defendant's internal policies and procedures related to advertising, product labeling, and ingredient sourcing and Defendant's commitment to compliance with marketing and advertising laws.

7. **Regulatory Compliance Documents**: Defendant agrees that evidence and documentation showing the company's compliance with relevant advertising laws and regulations, such as the Federal Trade Commission ("FTC") guidelines on deceptive advertising, will

8. **Financial Records**: Defendant understands that a limited portion of financial records are likely to be introduced as evidence by Plaintiff but disputes Defendant's general financial information or financial records are relevant or admissible. Defendant further disputes that such records will support Plaintiff's theory that Defendant profited from an alleged misrepresentation on the Products' packaging. Rather, any such financial records will demonstrate Defendant's consumer sales of the Products during the relevant period generally.

**5.) Damages**

Plaintiff's Position: Plaintiff seeks all available monetary relief, including but not limited to compensatory and consequential damages, punitive damages, statutory penalties, restitution or disgorgement, and pre- and post-judgment interest. Plaintiff also seeks injunctive relief, as well as attorneys' fees and costs. Based on current information, Plaintiff estimates potential class damages to be approximately $2,500,000, exclusive of any punitive damages, attorneys' fees, or costs. This estimate is based on a 10% price premium applied to nationwide product sales of $25,289,533. However, this figure is preliminary, and a final damages assessment will depend on further discovery and expert analysis, including a conjoint study.

Defendant's Position: Defendant denies all liability for damages and does not seek recovery of damages from Plaintiff at this time. Defendant, however, reserves the right to seek damages and other sums in this action, including, but not limited to, its reasonable attorneys' fees and costs incurred.

**6.) Insurance**

The Parties are unaware of any insurance applicable to these claims.

**7.) Motions**

  **A.   Procedural Motions**

Plaintiff's Position: At this time, Plaintiff does not anticipate any amendments, but nonetheless reserves the right to amend the complaint and/or join additional parties.

Defendant's Position: At this time, Plaintiff does not anticipate any amendments to the Answer, but nonetheless reserves the right to do so as this case proceeds to discovery.

  **B.   Dispositive Motions**

Parties' Position: On March 21, 2025, Defendant filed a Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 11), and on May 2, 2025, the Court issued an order denying in substantial part and granting in limited part Defendant's motion to dismiss class action complaint and motion to strike class allegations.

The Parties anticipate the potential filing of discovery motions, *Daubert* motions, motions for summary judgment, motions in limine, and other pre-trial motions as appropriate or necessary depending on the progression of this litigation.

  **C.   Class Certification Motion**

Plaintiff's Position: Plaintiff anticipates filing a motion for class certification.

Defendant's Position: Defendant will oppose class certification.

**8.) Manual for Complex Litigation**

The Parties do not currently believe that the Manual for Complex litigation should be utilized at this time.

9.) **Discovery**

A. **Status of Discovery**

Plaintiff's Position: Plaintiff served his first set of discovery on May 5, 2025. Defendant's deadline to respond is July 9, 2025.

| Discovery | Status | Anticipated Issues |
|---|---|---|
| Written discovery (RFA, RPD, ROGs) | Plaintiff has served formal requests on May 5, 2025. Defendant's deadline to respond is July 9, 2025. | Plaintiff anticipates that production of documents will be delayed – as it has been common in many cases involving corporate entities. Plaintiff proposes to provide a realistic deadline by which all documents will be produced notwithstanding objections (i.e., 40 days from the date discovery is served). Plaintiff also proposes that all objections to discovery be served within 15 days from receipt of the requests, to allow the parties to begin a prompt meet and confer process related to the stated objections. |
| **Depositions** (of each of the Defendant's 30(b)(6) deponent(s)) | After all documents are produced, Plaintiff will send out individual notices of depositions. | Plaintiff anticipates that the depositions may need to be scheduled 5-6 months after the CMC, after Plaintiff obtains the relevant documents and information and conduct a proper review. |

| Third Party Discovery | Plaintiff intends to serve discovery shortly after the CMC. | Plaintiff anticipates that it may take longer to obtain documents from third parties. Plaintiff may encounter delays in obtaining documents from non-parties to litigation, especially corporate retailers of the Products. |
|---|---|---|
| **Deposition(s) of Third Parties** | Plaintiff believes that third party deposition may be necessary. | Plaintiff anticipates encountering discovery-related issues with some third parties, like corporate retailers of the Products. |
| **Deposition(s) of Percipient Witnesses** | Plaintiff will need to depose individuals who were involved in marketing, labeling and advertising of the Products. Plaintiff will also need to depose individuals who were involved in authorizing implementation of Defendant's labels; any research conducted related to the front label representations; any warning letters reviewed by Defendant, and /or its employees relating to labeling of the Products. | At this time it is unclear how many relevant witnesses may have been involved in this process. At this time, it is unclear if any issues will arise. |

Defendant's Position:

*Written Discovery*. Defendant served their first set of discovery on June 11, 2025. Plaintiff's deadline to respond is July 11, 2025.

Defendant disagrees that all objections to discovery be served within 15 days from receipt of the requests. The discovery rules provide adequate timing and systems to allow the parties to begin a prompt meet and confer process related to the stated objections.

*Third Party Discovery*: Defendant does not anticipate serving third party discovery at this time but reserves the right to do so depending on the progress of this litigation. Should third party discovery become necessary, Defendant anticipates that it may take longer to obtain documents from third parties.

*Deposition of Third Parties.* Defendant believes that third party deposition may be necessary. Defendant anticipates encountering discovery-related issues with some third parties.

*Deposition of Percipient Witnesses*. Defendant will need to depose Plaintiff regarding his purchases of the Products and interpretations of the nutritional and ingredient content of the Products. At this time it is unclear how many relevant witnesses may have knowledge of the events underlying the allegations in this matter. At this time, it is unclear if any issues will arise.

**B.     Discovery Plan**

Plaintiff's Position: As discussed above, Plaintiff believes that the Parties should exchange their documents early with the 26(a) disclosures, which would include the items outlined section 4 above. Exchanging these documents at the outset will help generate more targeted discovery and move to depositions faster. Plaintiff believes more time is necessary to conduct discovery in this case given that discovery will be necessary from the Parties, their agents/employees, and even third parties. Plaintiff also believes that often parties engage in addressing unnecessary boilerplate objections, and for that reason, proposes to exchange documents early, and produce documents responsive to discovery notwithstanding objections on the following timeline:

| 26(a) disclosures <u>with</u> documents | June 23, 2025 | [allowing the parties to identify relevant witnesses and exchange relevant documents sooner] |
|---|---|---|
| Document Production [notwithstanding objections] | 15 days after service to submit objections [if no documents are intended to be produced, to state so within the objections]. 45 days after document requests to submit production of documents. | [to avoid standard requests for extension/boilerplate objections, and enable the parties to begin a prompt meet and confer process] |

<u>Defendant's Position</u>: The parties should exchange 26(a) initial disclosures by no later than June 23, 2025. *See* F.R.C.P 26(a). Defendant agrees that substantial productions of documents should occur within 45 days after document requests are served. Defendant, however, reserves the right to supplement its production following the 45-day deadline. Further, as noted above, Defendant disagrees that all objections to discovery be served within 15 days from receipt of the requests. The discovery rules provide adequate timing and systems to allow the parties to begin a prompt meet and confer process related to the stated objections.

### C. **Discovery Cut-Off**

The Parties respectfully direct the court to the class certification plan attached hereto as Exhibit 1.

### D. **Expert Discovery**

<u>Plaintiff's Position</u>: Plaintiff proposes an initial expert witness disclosure date of April 24, 2026, a rebuttal expert disclosure date of May 1, 2026, and an expert discovery cut-off of June 5, 2026.

<u>Defendant's Position</u>: Defendant proposes Plaintiff's initial expert witness disclosure date of November 1, 2025, a rebuttal expert disclosure date of December 15, 2025, and an expert discovery cut-off of January 26, 2026.

E. **Settlement Conference / Alternative Dispute Resolution ("ADR")**

The Parties have not engaged in any formal ADR process. The Parties anticipate the Court's ruling on Defendant's motion to dismiss and Plaintiff's motion for class certification as having a significant impact on any ADR. The Parties have reviewed ADR L.R. 16-15.4, and certify that they will comply with L.R. 16-15.4 if they engage in ADR during the course of litigation, and if the matter remains before this Court. The Parties prefer private mediation (at the parties' expense).

F. **Trial**

   i. **Trial Estimate**

<u>Plaintiff's Position</u>: Plaintiff requests a jury trial and anticipates a seven (7) to ten (10) day trial. Plaintiff estimates about 7-10 witnesses to be called.

<u>Defendant's Position</u>: Defendant requests a jury trial and agrees and anticipates a ten (10) to twelve (12) day trial. Defendant estimates at least 7-10 witnesses to be called.

   ii. **Jury or Court Trial**

<u>Plaintiff's Position</u>: Plaintiff requests a jury trial and anticipates a seven (7) to ten (10) day trial.

<u>Defendant's Position</u>: Defendant requests a jury trial and anticipates a ten (10) to twelve (12) day trial.

   iii. **Consent to Trial Before a Magistrate Judge**

At least one of the parties does not consent to trial before a magistrate judge.

   iv. **Lead Trial Counsel**

   Plaintiff's Position: Valter Malkhasyan of Malk & Pogo Law Group will be lead trial counsel for Plaintiff, and Erik Pogosyan of Malk & Pogo Law Group, LLP will also participate in the trial.

   Defendant's Position: Brent Owen of Haynes Boone LLP, admitted *pro hac vice*, will be lead trial counsel for Defendant. Other attorneys from Haynes Boone LLP will participate in the trial.

### G. Independent Expert or Master

   Plaintiff's Position: Plaintiff does not anticipate the need for independent expert or master, at this time.

   Defendant's Position: Defendant reserves the right to request an independent expert as discovery unfolds.

### H. Other Issues

   Plaintiff's Position: Plaintiff does not anticipate any other issues at this time.

   Defendant's Position: Defendant does not anticipate any other issues at this time.

### I. Scheduling Worksheet

   Plaintiff's Position: See worksheet below.

   Defendant's Position: See worksheet below.

| | | |
|---|---|---|
| DATED: June 16, 2025 | | **MALK & POGO LAW GROUP, LLP** |
| | | By: */s/ Valter Malkhasyan* |
| | | Valter Malkhasyan, Esq. |
| | | Erik Pogosyan, Esq. |
| | | *Counsel for Plaintiff and the Purported Class* |
| DATED: June 16, 2025 | | Brent Owen |
| | | HAYNES AND BOONE, LLP |
| | | By: */s/ Brent Owen* |
| | | Brent Owen |
| | | Counsel for Defendant, Target Corporation, et al. |
| | | Daniel Lammie (Bar No. 345838) |
| | | HAYNES AND BOONE, LLP |
| | | 112 E Pecan St, Ste 2400 |
| | | San Antonio, TX 78205 |
| | | Tel: (210) 978-7458 |
| | | daniel.lammie@haynesboone.com |
| | | Letitia Johnson-Smith (Bar No. 355642) |
| | | HAYNES AND BOONE, LLP |
| | | 600 Anton Boulevard, Suite 700 |
| | | Costa Mesa, CA 92626 |
| | | Tel: (949) 202-3035 |
| | | Letitia.johnson-smith@haynesboone.com |

# APPENDIX A
## JUDGE MONICA RAMÍREZ ALMADANI
### SCHEDULE OF PRETRIAL DATES WORKSHEET

Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.
**The Court ORDERS the parties to make every effort to agree on dates.**

| Case No. 2:25-cv-02314-MRA-KS | Case Name: *Tovmasyan v. Target Corporation, et al.* |
|---|---|

| Final Pretrial Conference Dates | Parties' Joint Date mm/dd/yyyy | Court Order |
|---|---|---|
| Check one: ☒ Jury Trial or ☐ Court Trial **[The Court sets the trial date at the Final Pretrial Conference]** Estimated Duration: 10-12 Days | NA | NA |
| Final Pretrial Conference ("FPTC" [L.R. 16], **[Monday at 3:00 pm., within 12 months of Scheduling Conference]** | 5/10/2027 | |

| Event[4] **Note:** Hearings must be on Mondays at 1:30 p.m. Other dates can be any day of the week | Weeks Before FPTC[5] | Parties' Joint Date mm/dd/yyyy | Court Order |
|---|---|---|---|
| Opposition to Motions in Limine Filing Deadline | 3 | 04/19/2027 | |
| Motions in Limine Filing Deadline | 5 | 04/05/2027 | |
| Settlement Conference Completion Date [L.R. 16-15] **Select one:** ☐ Mag. Judge ☐ Panel ☒ Private | 5 | 04/05/2027 | |
| Last Date to **HEAR** Daubert Motions *[Monday]* | 9 | 03/08/2027 | |
| Last Date to **HEAR** Non-Discovery Motions *[Monday]* (see Procedures page for Rule 56 Motion deadlines) | 12 | See Class Cert. Plan, Ex. 1 | |
| Expert Discovery Cut-off | 14 | See Class Cert. Plan, Ex. 1 | |
| Expert Disclosure (Rebuttal) | 17 | See Class Cert. Plan, Ex. 1 | |
| Expert Disclosure (Initial) | 21 | See Class Cert. Plan, Ex. 1 | |
| Non-Expert Discovery Cut-off (no later than deadline for *filing* dispositive motions. | 24 | See Class Cert. Plan, Ex. 1 | |
| Last Date to *Hear* Motions to Amend Pleadings/Add Parties **[Monday 90 days after Rule 16 Scheduling Conference]** | X | 10/6/2025 | |

---

[4] Once issued, this "schedule may be modified only for good cause and with the judge's consent." Fed. R.

---

Civ. P. 16(b)(4).
[5] This is the Court's recommended default timeline for certain events. The parties may propose alternate dates based on the needs of each individual case.