Daniel Lammie (Bar No. 345838)
HAYNES AND BOONE, LLP
112 East Pecan Street, Suite 2400
San Antonio, TX 78205
Telephone: (210) 978-7000
Facsimile: (210) 978-7450
Daniel.lammie@haynesboone.com

Letitia Johnson-Smith (Bar No. 355642)
HAYNES AND BOONE, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Telephone: (949) 202-3000
Facsimile: (949) 202-3001
Letitia.johnson-smith@haynesboone.com

Brent R. Owen (Bar No. 45068)
Allison Regan (Bar No. 61960)
HAYNES AND BOONE, LLP
675 15th Street, Suite 2200
Denver, CO 80202
T: (303) 382-6200
F: (303) 382-6210
Brent.owen@haynesboone.com
Allison.Regan@haynesboone.com
**[PRO HAC VICE]**

Attorneys for Defendant
TARGET CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIGEN TOVMASYAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION, a corporation, and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-02314-MRA-KS<br><br>Assigned to District Judge:<br>Hon. Monica Ramirez Almadani<br><br>**DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES HERETO**<br><br>Hearing<br>Date:        April 14, 2026<br>Time:        10:00 a.m.<br>Courtroom:  9B |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 14, 2026, at 10:00 a.m., or as soon as thereafter as this matter may be heard in the Courtroom 9B of the United States District Court for the Central District of California, located at Ronald Reagan Federal Building and United States Courthouse, 411 W. 4th Street, Santa Ana, California 92701, before the Honorable Monica Ramirez Almadani, Defendant Target Corporation ("Target") will and hereby does move for summary judgment on all causes alleged by Plaintiff Vigen Tovmasyan ("Plaintiff") in the within action or, in the alternative, for partial summary judgment on one or more of the Claims.

This Motion is made pursuant to Federal Rule of Civil Procedure 56 (the "Motion") on the grounds that there is no genuine dispute as to any material fact and Target is entitled to judgment as a matter of law on the Claims and entire Complaint filed by Plaintiff in the within action.

This Motion is based on this Notice of Motion and Motion for Summary Judgment, the accompanying Memorandum of Points and Authorities, the concurrently filed Statement of Uncontroverted Facts, the Declaration of Letitia Johnson-Smith, and the declarations and documents appended thereto; the Proposed Order submitted concurrently herewith; the pleadings previously filed in this action; and any oral argument permitted at the hearing on the Motion.

As detailed in the Declaration of Letitia Johnson-Smith, this Motion is made following the conference of counsel on January 20, 2026, pursuant to Local Rule 7-3 and the Court's Standing Order on Motions for Summary Judgment. Despite the best efforts of counsel, the parties did not reach a resolution.

Date:  February 3, 2026                    HAYNES AND BOONE, LLP

                                           By: _____
                                               Letitia Johnson-Smith
                                               Attorney for Defendant
                                               TARGET CORPORATION

1

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................1

II.   BACKGROUND.......................................................................................................2

    A.   Mr. Tovmasyan sued claiming he Purchased all four Products, and
        that he relied on a certain representation that does not actually appear
        on any of the Products. ....................................................................................2

    B.   Mr. Tovmasyan admitted he did not purchase two of the Products and
        did not rely on any representation in purchasing a third Product. ........3

III.  LEGAL STANDARD.................................................................................................5

IV.   ARGUMENT .............................................................................................................6

    A.   Mr. Tovmasyan lacks standing to seek damages or other relief for the
        Cranberry Jalapeno Dip and Taco Dip because he never bought either
        dip. ...................................................................................................................6

        i.    Mr. Tovmasyan did not suffer an injury-in-fact for the dips he
            did not purchase...................................................................................6

        ii.   Mr. Tovmaysan did not suffer any harm (there is no causation)
            for the dips he did not purchase.........................................................8

        iii.  Mr. Tovmasyan cannot establish standing as to unpurchased
            dips because the four dips are distinct from each other. .............8

    B.   Mr. Tovmasyan admitted that he did not rely on the Challenged
        Representation when he purchased the Tzatziki Dip (he called a
        "yogurt dip"), defeating his claim. ...........................................................11

    C.   Mr. Tovmasyan cannot establish causation as to his claims related to
        the Spinach Artichoke Dip. ........................................................................14

V.    CONCLUSION .......................................................................................................15

*i*

## <u>TABLE OF AUTHORITIES</u>

**Cases**          **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ......................................5

*Brazil v. Dole Food Co., Inc.,* No. 12-CV-01831-LHK,
2013 WL 5312418, at *7 (N.D. Cal. Sept. 23, 2013)..........................................9, 11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)........................................................5

*Chownow, Inc v. Owner.com,* No. 25-CV-07315-VKD,
2026 WL 125612, at *6 (N.D. Cal. Jan. 16, 2026).....................................................14

*Dysthe v. Basic Rsch. LLC,* No. CV 09-8013 AG SSX,
2011 WL 5868307, at *3 (C.D. Cal. June 13, 2011)...........................................6, 7, 8

*Graham v. VCA Antech, Inc.*, No. 2:14-CV-08614-CAS-JC,
2016 WL 5958252, at *5 (C.D. Cal. Sept. 12, 2016).....................................................13

*Granfield v. NVIDIA Corp.,* No. C 11-05403 JW,
2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ....................................................9

*Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)......................................5

*In re iPhone Application Litig.,* 6 F. Supp. 3d 1004,
1012 (N.D. Cal. 2013) ............................................................................12, 13

*Johns v. Bayer Corp.,* No. 09CV1935 DMS (JMA),
2010 WL 2573493, at *3 (S.D. Cal. June 24, 2010) ....................................................8

*Jones v. ConAgra Foods, Inc.,* No. C 12-01633 CRB,
2014 WL 2702726, at *3 (N.D. Cal. June 13, 2014)....................................................9

*Kachuck Enters. v. Mission Produce, Inc.,* No. 2:25-CV-01523-AH (JCX),
2025 WL 2995009, at *5 (C.D. Cal. Sept. 26, 2025)...........................................12

*Khasin v. Hershey Co.,* No. 5:12-CV-01862-EJD,
2014 WL 1779805, at *4 (N.D. Cal. May 5, 2014).....................................................12

*Larsen v. Trader Joe's Co.,* No. C 11-05188 SI,
2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012).....................................................9

*i*

*Lujan v. Defenders of Wildlife*, 504 U.S. 332, 341 (2006)........................................6

*Masry v. Abbott Lab'ys,* No. 23-CV-04348-NW,
2025 WL 2836653, at *3 (N.D. Cal. Aug. 28, 2025)........................................12, 13

*Michael v. Honest Co., Inc.,* No. LACV1507059JAKAGRX,
2016 WL 8902574, at *10 (C.D. Cal. Dec. 6, 2016)..........................................9, 10

*Popa v. Microsoft Corp.*, 153 F.4th 784, 790-95 (9th Cir. 2025) ...........................7

*Reyes v. Educ. Credit Mgmt. Corp.,* 773 F. App'x 989, 990 (9th Cir. 2019).........11

*Saber v. JPMorgan Chase Bank, N.A.*, No. SACV 13-00812 DOC,
2014 WL 2159395, at *3 (C.D. Cal. May 22, 2014)................................................14

*Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793-94 (9th Cir. 2012)....12

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)........................................6, 7, 8, 9

*Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998)..........................6

*TransUnion LLC v. Ramirez,* 594 U.S. 413, 424–25,
141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568 (2021) ....................................................7

*Wilson v. Frito-Lay N. Am., Inc.,* 961 F. Supp. 2d 1134,
1140–41 (N.D. Cal. 2013) .......................................................................................8

**Rules**
Fed. R. Civ. P. 56(a) ...............................................................................................5

ii

## I.    INTRODUCTION

Defendant Target Corporation ("Target") is entitled to summary judgment on Plaintiff Vigen Tovmasyan's ("Mr. Tovmasyan") claims under California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"), as well as his claims for breach of warranty, unjust enrichment, common law fraud, intentional misrepresentation, and negligent misrepresentation.  Mr. Tovmasyan originally sued claiming that he had been deceived in purchasing four different Good & Gather dips:  Cranberry Jalapeno Dip, Taco Dip, Tzatziki Dip, and Spinach Artichoke Dip (collectively, the "Products" and each, a "Product").  He claims (incorrectly) that each of the Products' respective front labels include the following "Challenged Representation": "**No Artificial Colors, Flavors, or Preservatives**," which he contends is false and misleading.  Discovery revealed that Mr. Tovmasyan purchased—at most—two of the four Products, he did not rely on any representation whatsoever for another of the Products, and—in any event—the Products do not universally contain the same "Challenged Representation," nor are they otherwise similar.  Given these undisputed facts, Mr. Tovmasyan cannot establish the essential elements of his claims as a matter of law.

*First*, Mr. Tovmasyan testified that he **did not** purchase two of the Products—the Cranberry Jalapeno Dip and the Taco Dip.  Thus, Mr. Tovmasyan lacks standing to sue and seek damages for the Products he did not purchase. Most fundamentally, Mr. Tovmasyan cannot claim he relied on, or suffered an injury from, items he did not buy and for which he did not rely on the Challenged Representation.

*Second*, for each of the claims, Mr. Tovmasyan is required to prove actual reliance on the challenged front-label representation (the Challenged Representation).  Based on his under-oath admissions, Mr. Tovmasyan did not view or rely on the Challenged Representation for the dip he repeatedly referred to as a

- 1 -

"yogurt dip" (it is actually a Tzatziki Dip).  This admission defeats his claim.

*Third*, Mr. Tovmasyan admitted that the Challenged Representation—and the supposedly "fraudulent statement" therein—did not actually change his behavior.  Namely, he continues to eat Spinach Artichoke Dip that contains citric acid, thus eliminating any causation for the one Product he actually testified to purchasing in reliance on the Challenged Representation.

Summary judgment should be entered against all Mr. Tovmasyan's claims as to all four Products.

## II.     BACKGROUND

Target is a national retailer with locations in all 50 states, operating nearly 2,000 stores in the United States.  As part of its business model, Target sells groceries including the Products at issue in this litigation.   (Statement of Uncontroverted Facts ("SUF") ¶ 1; Ex. B.)

**A.     Mr. Tovmasyan sued claiming he Purchased all four Products, and that he relied on a certain representation that does not actually appear on any of the Products.**

Mr. Tovmasyan alleges that the front label on these Products state, "**No Artificial Colors, Flavors, or Preservatives**" and defines that representation as the Challenged Representation.  (SUF ¶ 3; Ex. A.)  Mr. Tovmasyan's own pleadings reveal that the actual representation for the Products reads, "**No Artificial Flavors, Preservatives, or Synthetic Colors.**" (*Compare* SUF ¶ 4 *with* SUF ¶ 3; Ex. A; *see also* SUF ¶ 5; Ex. C.) Mr. Tovmasyan alleges Target falsely and deceptively advertised the Products to consumers because, contrary to the Challenged Representation, the Products contained citric acid, which he contends is an artificial preservative. (SUF ¶ 6; Ex. A.)

Mr. Tovmasyan claimed (mistakenly, it turns out) that he purchased each the Products throughout the relevant time: Cranberry Jalapeno Dip, Taco Dip, Tzatziki Yogurt Dip, and Spinach Artichoke Dip.  (SUF ¶ 2; Ex. A.)

Based on these allegations, Mr. Tovmasyan asserts the following claims on behalf of himself, an individual, and in a representative capacity on behalf of a Nationwide Class and California Subclass: (a) violations of California's Consumer Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA"), (b) violations of California's Unfair Competition Law, California Business and Professions Code § 17200, et seq.("UCL"), (c) violations of California's False Advertising Law California Business and Professions Code § 17500, et seq. ("FAL"), (d) breach of express warranty, (e) unjust enrichment, (f) common law fraud, (g) intentional misrepresentation, and (h) negligent misrepresentation.  (SUF ¶ 7; Ex. A.)

**B.    Mr. Tovmasyan admitted he did not purchase two of the Products and did not rely on any representation in purchasing a third Product.**

Contrary to his allegations to this Court, Mr. Tovmasyan testified that he never purchased two of the Products, the Cranberry Jalapeno Dip or the Taco Dip. (*Id*. ¶¶ 8-9; Ex. L.)  Mr. Tovmasyan further admitted that though he believes he purchased a "yogurt dip" (giving him the benefit of the doubt, he means the Tzatziki dip) on an unidentified date in 2023 or 2024. (SUF ¶ 14; Ex. L.) He could not remember any specifics about the purchase, including the precise product he purchased; he repeatedly referred to the dip as a "yogurt dip." (SUF ¶ 14; Ex. L.) Moreover, he testified, "I just wanted to eat it in the moment, it looked good to me, so I bought it." (SUF ¶ 15; Ex. L.)  In contrast, Mr. Tovmasyan testified that he purchased the Spinach Artichoke Dip based on a multitude of factors: the container's color, its smaller size, his preference for spinach artichoke dip, and the Challenged Representation (which, as noted, is not even the actual representation on the Spinach Artichoke Dip).  (SUF ¶ 12; Ex. L.) He does not recall the amount he paid for the alleged purchases but guesses he paid approximately $5 for each Product.  (SUF ¶¶ 13, 16; Ex. L.)

///

After he bought the Spinach Artichoke Dip, Mr. Tovmasyan watched a two-minute video on social media. According to Mr. Tovmasyan, that unproduced video claims that citric acid is sometimes used as a preservative-acting ingredient in consumer food products. (SUF ¶¶ 28-31; Ex. L.)  Mr. Tovmasyan testified that he made no further purchase of the Spinach Artichoke Dip once he realized it contains citric acid. (SUF ¶ 32; Ex. L.) But Mr. Tovmasyan admitted he still consumes other food products containing citric acid, including wine, tomatoes, strawberries, cream cheese, and burgers from In-n-Out. (SUF ¶¶ 34-36; Ex. L.) Notably, Mr. Tovmasyan continues to enjoy other spinach artichoke dips, especially from his favorite restaurant, Houston's. He testified:

> Q. And have you looked into whether the Houston's spinach artichoke dip contains citric acid?
>
> A. No, I haven't.
>
> Q. And would you stop purchasing it and going to Houston's and eating it if you knew that it did?
>
> A. My love for this place will conquer it, I think.
>
> Q. Your love for Houston's conquers all?
>
> A. Yes.
>
> Q. Understood. **So the citric acid wouldn't stop you as it relates to Houston['s] and their spinach artichoke dip?**
>
> **A. I don't think so.**
>
> …
>
> Q. So what you're desiring to eat is more important than the actual ingredients; is that fair?
>
> THE WITNESS: Sometimes I do consider it. Like I said, like I'm not a super, super healthy person, so sometimes I will think about it, sometimes I wouldn't and all the factors that take place.
>
> BY MS. REGAN:

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES HERETO
Case No.: 2:25-cv-02314-MRA-KS

Q. And sometimes you just eat it because it tastes good; is that fair?

A. Yeah. I'll eat specifically Houston's until I die. Hopefully, I live long. (SUF ¶ 33; Ex. L (objections omitted; emphasis added).)

He further testified that, after watching the video, his purchasing decisions are still based on a multitude of factors, including what type of product he desires to eat in the moment and whether he is "gaining weight." (SUF ¶ 38; Ex. L.) He also testified that, to date, he is not consistently concerned about the ingredients in the products he purchases and consumes, and he does not research whether certain foods contain citric acid. (SUF ¶¶ 33-40; Ex. L.)

## III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although the Court must view evidence in the light most favorable to the non-movant, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Id*. Likewise, "mere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

///

///

///

///

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES HERETO
Case No.: 2:25-cv-02314-MRA-KS

## IV.    ARGUMENT

### A.    Mr. Tovmasyan lacks standing to seek damages or other relief for the Cranberry Jalapeno Dip and Taco Dip because he never bought either dip.

Mr. Tovmasyan testified that he has never purchased or consumed Good & Gather's Cranberry Jalapeno Dip or Good & Gather's Taco Dip.  He cannot recover for alleged misrepresentations for products he did not buy or eat, and this portion of his claims should be dismissed as a matter of law.

"The 'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555-560 (1992)); *see also Dysthe v. Basic Rsch. LLC,* No. CV 09-8013 AG SSX, 2011 WL 5868307, at *3 (C.D. Cal. June 13, 2011).

#### i.    Mr. Tovmasyan did not suffer an injury-in-fact for the dips he did not purchase.

Mr. Tovmasyan cannot maintain a lawsuit about dips he did not purchase nor eat.  The first requirement, injury in fact, is the "first and foremost of standing's three elements." *Spokeo, Inc.*, 578 U.S. at 338 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998)).  This constitutional requirement is grounded in the limits of Article III; at the summary judgment stage, a plaintiff must offer evidence that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

Indeed, in *Spokeo* the Court emphasized that the injury must be concrete: "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* at 340 (citation omitted).  The Ninth Circuit has repeatedly endorsed the limits in *Spokeo*

- 6 -

and its progeny. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 790-95 (9th Cir. 2025) (upholding dismissal of plaintiff's claim where plaintiff failed to identify a concrete injury she suffered).

This reasoning is important in the context of consumer goods—where a party seeking redress must have the irreducible, constitutional minimum of a concrete injury. Namely, the consumer needs to have purchased the product sued on and thereby suffered the harm that California law provides a remedy for. In *Dysthe*, for example, the plaintiff brought CLRA and UCL claims concerning two products but admitted she had purchased a different product. The Court properly dismissed the claim, holding that plaintiff did "not have standing to bring her CLRA, UCL, or warranty claim *based on a product she never purchased*." *See* 2011 WL 5868307, at *3 (emphasis added). Critically too, the Court rejected as "unpersuasive" plaintiff's argument that the products were "nearly identical" with "'no real difference' between the two products besides the name." *Id.* at *10. The Court explained that having some commonality "is simply not enough" because "this is true for just about any type of product. After all, just because an Old Fashioned and a Manhattan both have bourbon doesn't mean they're the same drink." *Id.*

Applied here, Mr. Tovmasyan's claims about Cranberry Jalapeno Dip and Taco Dip both fail as a matter of law because he never purchased either dip. (SUF ¶¶ 8-9; Ex. L.) He fails to meet the irreducible, constitutional minimum of a "concrete injury" in fact because he suffered no injury related to those dips and his claims fail as a matter of law. As the Supreme Court has admonished courts: "*Spokeo* is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–25, 141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568 (2021); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (recognizing the Supreme Court's continued demand for strict applications of standing in accordance with Article III).

> ### ii.    *Mr. Tovmaysan did not suffer any harm (there is no causation) for the dips he did not purchase.*

Mr. Tovmasyan also does not meet the second requirement for standing—harm—because there is no harm to Mr. Tovmasyan from Target selling dips that Mr. Tovmasyan did not buy. Consistent with *Spokeo* and the Court's settled standing precedent, the Court in *Dysthe* also concluded that the plaintiff who never purchased the product sued on necessarily did not suffer harm from that product. *See id.; see also Johns v. Bayer Corp.,* No. 09CV1935 DMS (JMA), 2010 WL 2573493, at *3 (S.D. Cal. June 24, 2010) ("[T]o have standing under the UCL, as well as to serve as a class representative, a plaintiff must plead and prove that he or she 'has suffered injury in fact and has lost money or property *as a result of*' a defendant's unlawful, unfair, or fraudulent business practices.") (emphasis added).

By Mr. Tovmasyan's own admissions, he lacks standing because he cannot establish causation. He did not suffer an injury in fact—a concrete harm—related to Target's sale of Cranberry Jalapeno Dip or Taco Dip because he never purchased those products. (SUF ¶¶ 8-9; Ex. L.)

> ### iii.    *Mr. Tovmasyan cannot establish standing as to unpurchased dips because the four dips are distinct from each other.*

Mr. Tovmasyan may argue that the Cranberry Jalapeno Dip and Taco Dip are similar enough to the Spinach Artichoke Dip he purchased (allegedly in "reliance" on representations on the front) that he has standing to maintain claims as to those two products. First, Mr. Tovmasyan failed to plead "substantial similarity" in his Complaint, which is reason alone to reject that argument now. *See Wilson v. Frito-Lay N. Am., Inc.,* 961 F. Supp. 2d 1134, 1140–41 (N.D. Cal. 2013) (requiring a plaintiff "plead sufficiently detailed facts that the non-purchased products are 'substantially similar' to the purchased products for which they have standing.").

Were this Court to consider any argument related to <u>unpled</u> substantial similarity between the products (it should not), such an argument must fail. The

- 8 -

substantial similarity test is at odds with Article III standing requirements. Indeed, it invites the kind of error the Court has repeatedly corrected in its standing jurisprudence. *See, e.g.*, *Spokeo*, 578 U.S. at 338; *see also Granfield v. NVIDIA Corp.,* No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased *must be dismissed for lack of standing*.") (emphasis added). "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Jones v. ConAgra Foods, Inc.,* No. C 12-01633 CRB, 2014 WL 2702726, at *3 (N.D. Cal. June 13, 2014). Many courts agree with this commonsense application of the Court's standing precedent. *See e.g., Larsen v. Trader Joe's Co.,* No. C 11-05188 SI, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) ("The Court finds plaintiffs do not have standing to bring this claim because they did not purchase the Crescent Rolls and therefore, as a matter of law, could not have suffered a particularized injury as required by Article III."); *Brazil v. Dole Food Co., Inc.,* No. 12-CV-01831-LHK, 2013 WL 5312418, at *7 (N.D. Cal. Sept. 23, 2013) ("The substantially similar approach therefore recognizes the need to limit a plaintiff's standing to injury he has personally suffered.").

Mr. Tovmasyan cannot establish substantial similarity of the Products. "The relevant factors to consider in this analysis 'include whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling.'" *Michael v. Honest Co., Inc.,* No. LACV1507059JAKAGRX, 2016 WL 8902574, at *10 (C.D. Cal. Dec. 6, 2016). Here, the Cranberry Jalapeno Dip and Taco Dip—which Plaintiff admits he did not purchase—are distinct from each other and the Spinach Artichoke and Tzatziki Dip as to both the packaging and composition.

- 9 -

The dips are "similar" in the loosest sense—they are all dips. But the similarities end there. Some of the Products contain citric acid as a standalone ingredient, while other Products contain citric acid only as a sub-ingredient within the product. For example, the Spinach Artichoke Dip contains citric acid as a sub-ingredient of the artichoke ingredient. (*Id.* ¶¶ 26-27; Ex. J.) In contrast, the Cranberry Jalapeno Dip contains citric acid as a standalone ingredient. (SUF ¶¶ 18-19; Ex. E) And, even looking beyond citric acid, the Products' ingredients differ significantly from each other. For example, the Cranberry Jalapeno Dip during the class period includes but is not limited to: cream cheese, dried cranberries, and white cheddar cheese. (SUF ¶¶ 18-19; Exs. E-D.) On the other hand, the ingredients of the Spinach Artichoke Dip include, but are not limited to: artichokes, spinach, and sour cream; the Spinach Artichoke Dip does not contain white cheddar cheese, but contains parmesan, mozzarella and feta cheese. (SUF ¶¶ 26-27; Exs. D, J.) Different still, the ingredients of Taco Dip include but are not limited to sour cream, salsa, and jalapeno peppers. (SUF ¶¶ 21-22; Exs. D, G.) And, the ingredients in the dips changed during the class period. (SUF ¶¶ 18-19, 21-22, 26-27; Exs. E-H.)

As it relates to the Challenged Representation, Mr. Tovmasyan has identified two different versions of the representation on the Products which he challenges as the basis for his claims. (*See* SUF ¶¶ 3-5; Exs. A, C.) In other words, Plaintiff is unable to even identify which alleged misrepresentation his claims are based upon. As the Cranberry Jalapeno and Taco Dips—which Mr. Tovmasyan admitted he did not purchase—are distinct from the other Products, his claims must fail as to the Cranberry Jalapeno Dip and Taco Dip. *Michael v. Honest Co., Inc.,* No. LACV1507059JAKAGRX, 2016 WL 8902574, at *8 (C.D. Cal. Dec. 6, 2016) ("Where the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased."). Relatedly, and, as will be critical to a reliance analysis on Mr. Tovmasyan's claims on behalf of a class, the product containers are distinct from each other. The

- 10 -

Cranberry Jalapeno Dip comes in a bright pink label, with white text, and imagery depicting its specific contents. (SUF ¶ 17; Ex. D.) The Taco Dip includes a yellow label, with dark text, and different imagery. (SUF ¶ 20; Ex. D.) The Spinach Artichoke Dip includes a lime green label, with white text, and imagery depicting its specific contents. (SUF ¶ 25; Ex. D.) The Tzatziki Dip identified in the complaint includes a teal label, with white text, and again different imagery depicting its specific contents. (SUF ¶ 23; Ex. D.) Further, the Products come in different shaped containers.

The "entire point of the substantially similar approach: by limiting a plaintiff's ability to sue over products he did not purchase to situations involving claims and products that are substantially similar to those products he did purchase, courts ensure that the plaintiff is seeking to represent only those individuals who have suffered essentially the same injury as the plaintiff." *Brazil v. Dole Food Co., Inc.,* No. 12-CV-01831-LHK, 2013 WL 5312418, at *7 (N.D. Cal. Sept. 23, 2013). Because Mr. Tovmasyan admittedly never purchased the Cranberry Jalapeno Dip or the Taco Dip, and because the products are not substantially similar, Defendant is entitled to summary judgment on all of Mr. Tovmasyan's causes of action as to the unpurchased dips. *Reyes v. Educ. Credit Mgmt. Corp.,* 773 F. App'x 989, 990 (9th Cir. 2019) ("Because a class action cannot go forward without a named plaintiff, a putative class action lacking an appropriate named plaintiff should be dismissed.").

**B.    Mr. Tovmasyan admitted that he did not rely on the Challenged Representation when he purchased the Tzatziki Dip (he called a "yogurt dip"), defeating his claim.**

Mr. Tovmasyan lacks standing as to the Tzatziki Dip (he incorrectly called "yogurt dip"). That is because he cannot prove actual reliance on the Challenged Representation.   "In the case of a consumer defrauded by a defendant's misrepresentations, reliance is the necessary casual mechanism of fraud." *Kachuck Enters. v. Mission Produce, Inc.,* No. 2:25-CV-01523-AH (JCX), 2025 WL

- 11 -

2995009, at *5 (C.D. Cal. Sept. 26, 2025) (quotations omitted; emphasis added). Thus, to have standing to bring claims under the UCL, FAL, or CLRA, a plaintiff must present facts evidencing that he actually relied "on the defendant's alleged misrepresentation and that [he] suffered economic injury as a result." *In re iPhone Application Litig.,* 6 F. Supp. 3d 1004, 1012 (N.D. Cal. 2013) ("actual reliance is an essential element of standing in this case under Article III, as well as the CLRA and UCL."); *see also Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793-94 (9th Cir. 2012) (holding that plaintiffs who bring claims under the UCL and CLRA sounding in fraud are required to prove "actual reliance on the misrepresentation and harm."). "A showing of actual reliance . . . requires a plaintiff to establish that 'the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct.'" *In re iPhone Application Litig.,* 6 F. Supp. 3d 1004, 1014 (N.D. Cal. 2013). "While a plaintiff is not required to show that the challenged misrepresentation was 'the sole or even the predominant or decisive factor influencing his conduct,' the misrepresentation must have 'played a substantial part ... in influencing his decision.'" *Masry v. Abbott Lab's,* No. 23-CV-04348-NW, 2025 WL 2836653, at *3 (N.D. Cal. Aug. 28, 2025).

In *Khasin*, like here, the Defendant moved for summary judgment on claims based upon plaintiff's deposition testimony that he did not view or rely on the product representation challenged in the lawsuit. *Khasin v. Hershey Co.,* No. 5:12-CV-01862-EJD, 2014 WL 1779805, at *4 (N.D. Cal. May 5, 2014) ("Plaintiff testified that he could not recall looking at Hersey's labels[.]"). In granting summary judgment in favor of defendant as to products for which plaintiff admitted he did not view or rely on the challenged representation, the court reiterated that false and deceptive advertising claims require satisfaction of Article III standing requirements and that the plaintiff establish "actual reliance" on the representation upon which they sue. The court ultimately held that plaintiff's admission precluded him from establishing reliance on the challenged representation. *See id.* at *4. Here

- 12 -

too, Mr. Tovmasyan cannot establish reliance based on a label he does not recall reading.  Mr. Tovmasyan testified that he recalls purchasing a "yogurt dip" at some point in 2023 or 2024. (SUF ¶ 14.)  In fact, Mr. Tovmasyan testified that impetus for his decision to purchase the "yogurt dip" was that it looked like it would taste good and because he desired to eat "yogurt dip" in that moment. (*Id*. ¶ 15; Ex. L.) He further admitted he never saw or read the Challenged Representation on the Tzatziki Yogurt Dip or any "yogurt dip".  (SUF ¶ 15; Ex. L.)  In other words, the substantial influence on Mr. Tovmasyan's decision to purchase the "yogurt dip" was that he desired to consume a "yogurt dip". *See Masry,* 2025 WL 2836653, at *3 (requiring the challenged representation be a "substantial factor" in the purchasing decision to establish reliance). This is insufficient to establish the actual reliance required to recover on the asserted causes of action.

Indeed, unsurprisingly courts require that a plaintiff see, read, or hear the alleged misrepresentation and rely on it to sue; mere "receipt" of a document containing a misstatement is insufficient.  *See Graham v. VCA Antech, Inc*., No. 2:14-CV-08614-CAS-JC, 2016 WL 5958252, at *5 (C.D. Cal. Sept. 12, 2016) ("[I]t is not enough to 'receive' a misrepresentation in a document; a plaintiff must see, read, or hear the alleged misrepresentation and rely on it."); *In re iPhone Application Litig*., 6 F. Supp. 3d 1004, 1022-25 (N.D. Cal. 2013) (rejecting the notion that merely "receiving" a misrepresentation without reading or relying on it suffices to establish standing). The mere fact that Mr. Tovmasyan (or his lawyer) may have later seen the Challenged Representation on the Product container does not establish "actual reliance" required to prosecute the claims he raises here. Rather, a plaintiff cannot avoid summary judgment unless plaintiff "point[s] to specific facts indicating that Plaintiffs actually saw the misrepresentations about which they complain, and that those misrepresentations were 'substantial factors' in Plaintiffs' decisions to purchase[.]" *In re iPhone Application Litig., 6 F. Supp. 3d 1004, 1020 (N.D. Cal. 2013) (cleaned up) (granting the defendant's motion for

- 13 -

summary judgment where plaintiffs were unable to establish they actually viewed or read the alleged misrepresentations with specific evidence).

Because he admittedly did not rely on the Challenged Representation in purchasing the Tzatziki Dip, his claim seeking redress for those Challenged Representations fails as a matter of law.

### C.    Mr. Tovmasyan cannot establish causation as to his claims related to the Spinach Artichoke Dip.

Although Mr. Tovmasyan testified that he purchased the Spinach Artichoke Dip, he cannot establish a necessary element of his claims with respect to that dip: causation. For UCL and FAL claims, plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, *i.e., economic injury*, and (2) show that that economic injury was the result of, *i.e., caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Chownow, Inc v. Owner.com,* No. 25-CV-07315-VKD, 2026 WL 125612, at *6 (N.D. Cal. Jan. 16, 2026); *see also Saber v. JPMorgan Chase Bank, N.A.*, No. SACV 13-00812 DOC, 2014 WL 2159395, at *3 (C.D. Cal. May 22, 2014) (requiring plaintiff demonstrate a "causal connection" between his harm and Chase's alleged misrepresentations."); *Clark v. Hershey Company*, 2019 WL 6050763, at *2 (plaintiff is required to show that the misrepresentation caused purchase of the product). The connection is broken, if the plaintiff would have suffered the same harm regardless of the alleged misrepresentation.  *See Clark*, 2019 WL 6050763, at *2 ("[P]laintiff must demonstrate that he or she would not have bought the product *but for the misrepresentation*.") (emphasis added). Courts apply the same analysis to CLRA claims. *See e.g., id.* ("Causation is also a necessary element under California law" for claims brought under the CLRA, FAL, or UCL).

Here, Mr. Tovmasyan fails to establish causation as to his claims based on his purchase of the Spinach Dip. Mr. Tovmasyan admitted that sometimes he cares

- 14 -

and other times he does not care about the ingredients in his food, including specifically in spinach artichoke dips.  (SUF ¶¶ 35, 39; Ex. L.)  First, Mr. Tovmasyan testified that his purchasing decisions are based on a multitude of factors, including, critically, what he feels like eating in the moment. (SUF ¶¶ 36-39; Ex. L.)  He specifically testified that he presently makes purchases without regard for whether a product contains citric acid or other preservatives. (SUF ¶¶ 35, 39; Ex. L.)  What's more, Mr. Tovmasyan continues to routinely purchase and consume spinach artichoke dips which contain citric acid, as well as other food products containing citric acid. (SUF ¶¶ 33-40; Ex. L.)  He stated that he does, and will continue to, eat the spinach dip from his favorite restaurant, Houston's, regardless of the ingredients (including citric acid) because his "love for" the restaurant selling the dip "conquers all."  (SUF ¶¶ 33; Ex. L.)  Moreover, Mr. Tovmasyan testified generally that even since learning, from a two-minute social media video, that citric acid is sometimes used as a preservative-acting ingredient in food products, has not done any research to determine what products he regularly purchases and ingests contain citric acid,  nor has he taken any steps to avoid such food products. (SUF ¶¶ 33-36, 39-40; Ex. L.) Viewed together, these admissions are fatal to causation and establish that Mr. Tovmasyan would have purchased the Product regardless of the Challenged Representation.  Indeed, he admitted that he continues to consume that precise kind of dip without a concern for the truth or falsity of the Challenged Representation. Target is therefore entitled to summary judgment on all three of Mr. Tovmasyan's causes of action based on his purchase of the Spinach Artichoke Dip.

## V.     CONCLUSION

Target respectfully requests that the Court grant summary judgment in Target's favor as to all of Mr. Tovmasyan's claims for the reasons set forth herein. At minimum, Target is entitled to judgment as a matter of law on all of Mr. Tovmasyan's claims as to the Products he admittedly never purchased (Cranberry

- 15 -

Jalapeno Dip and Taco Dip), and to the Product for which he did not rely on a representation (the Tzatziki Dip).

Date:  February 3, 2026                    HAYNES AND BOONE, LLP

By:  _____
     Letitia Johnson-Smith
     Attorneys for Defendant
     TARGET CORPORATION

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES HERETO
Case No.: 2:25-cv-02314-MRA-KS