# EXHIBIT 2 – PLAINTIFF'S MEET & CONFER LETTER RE NOTICED DEPOSITION TOPICS



Valter Malkhasyan, Esq.
Lead Attorney

**MALK & POGO LAW GROUP, LLP**
1241 S. Glendale Ave, Suite 204
Glendale, CA 91205
(818) 484-5204 (Main)
(818) 351-6611 (Direct)
valter@malkpogolaw.com

September 30, 2025

<u>**SENT VIA EMAIL**</u>

Brent R. Owen
Haynes And Boone, LLP
675 15th Street, Suite 2200
Denver, CO 80202
Brent.owen@haynesboone.com

>       ***Re:***    <u>Meet and Confer Regarding Plaintiff's Noticed Deposition Topics Pursuant to Rule
>       30(b)(6) - *Vigen Tovmasyan v. Target Corporation et al*, Case No. 2:25-cv-02314-
>       MRA-KS</u>

Dear Mr. Owen,

This letter constitutes Plaintiff Vigen Tovmasyan's ("Plaintiff") good faith effort to meet and
confer regarding Defendant Target Corporation's ("Defendant") inability to produce a Rule
30(b)(6) corporate designee on the majority of Plaintiff's noticed topics.

Rule 30(b)(6) requires Target to designate one or more witnesses prepared to testify about
information "known or reasonably available to the organization," which includes information in
Target's files, within its control, or reasonably obtainable from brand partners and vendors for
Target-owned brands. Relatedly, Rule 34 permits discovery of relevant items in a party's
"possession, custody, or control," and courts consistently hold that control includes the legal right
to obtain documents on demand. *United States v. Int'l Union of Petroleum & Indus. Workers*, 870
F.2d 1450, 1452 (9th Cir. 1989) ("Control is defined as the legal right to obtain documents upon
demand.").

Malk & Pogo Law Group, LLP   |   1241 S. Glendale Ave, Suite 204 Glendale, CA 91205   |   P: (818) 484-5204

September 30, 2025
Page 2 of 6

Target expressly acknowledges in its public disclosures that it exercises end-to-end oversight and control over *owned-brand* food products (including Good & Gather) — covering vendor approval, production, testing, quality, regulatory compliance, and label validation.[1]

Target represents that its "product safety, quality and regulatory program incorporates every stage of our owned brand product life cycle" and requires third-party testing (including *label validation*) and holds vendors to Target's standards and applicable regulations.[2] Its sustainability and governance disclosures likewise explain that owned-brand food vendors are accountable to regulatory guidelines and Target's internal standards, and that Target verifies compliance through end-to-end assessments, in-production reviews, testing, and vendor capability evaluations.[3]

These public commitments contradict any suggestion that Target is not privy to ingredients, processes, or labeling decisions for Good & Gather products, or that such information is solely within "third-party" possession. Target chose to create and sell a Target-brand product; it maintains the teams, tools, and processes to oversee ingredients, production, and labeling. A prepared designee must therefore address the topics below. If a specific document or information does not exist, Target may testify to that fact. However, Target cannot disclaim responsibility or refuse to produce a knowledgeable witness on matters that lie at the core of this case.

## The Product (Topics 1–6)

While we understand that Target contracts with third-party manufacturers to manufacture and label the Products, that does not relieve Target of its Rule 30(b)(6) obligation. As the owner of the Good & Gather brand, Target necessarily oversees and approves product specifications, formula changes, quality standards, and labeling claims. Target's own product-safety and quality programs require vendor capability evaluations, third-party testing (including chemical analyses), label validation, and end-to-end reviews for owned-brand items.[4]

In short, this is information "known or reasonably available to the organization." Accordingly, Target can—and should—prepare a designee to provide testimony on:

- **Formulation/Variations/Changes/Ingredient Combinations:** A witness can testify to the formulations sold during the class period, any variations and when they were implemented, proposed changes (approved or rejected), and the ingredient combinations for each SKU. That preparation can be done by reviewing vendor specifications, tech sheets, statements of work, bills of materials, change logs, and Target's internal QA/QC and approval workflows.

---

[1] "Product Safety and Quality Assurance Tools and Processes." *News, Careers, Investors, Sustainability & Governance*, corporate.target.com/sustainability-governance/operating-ethically/product-safety-quality-assurance/product-safety. Accessed 30 Sept. 2025.
[2] *Id.*
[3] *Id.*
[4] *Id.*

September 30, 2025
Page 3 of 6

- **Product Testing:** A witness can address testing Target conducted or received from its manufacturers, including the nature and methodology of tests, results, and any written reports or analyses (e.g., shelf-life, stability, preservative-function, and label-substantiation testing).

- **Understanding of the "No Artificial Colors, Flavors, or Preservatives" Claim.** This topic concerns Target's understanding of the challenged claim and the ingredients that make up the Products. That falls squarely within Target's brand, legal, regulatory, and quality functions. At minimum, a corporate representative can testify to Target's internal standards, guidance, and substantiation for the claim; how Target interprets "preservatives" "flavors" and "artificial"; and how those standards were applied to the Products at issue.

To be clear, we are not insisting that your witness recite proprietary manufacturing know-how from memory. We are asking for a properly prepared designee who can provide corporate-level testimony based on documents and information reasonably available to Target—including vendor-provided materials that Target reviews in the ordinary course of business (specs, QA/QC files, test reports, and approval records).[5]

If, after a reasonable inquiry, there are narrow questions Target's designee cannot answer, we can address those on the record or subsequent meet and confer efforts. But refusing to produce any witness on Topics 1–6 is not acceptable. These topics directly relate to the heart of the issues in this case— ***Defendant's misleading marketing, advertising, labeling, and packaging of the Products***. *See Martin v. Monsanto Co.¸2017 U.S. Dist. LEXIS 214624* at *11-12 (C.D. Cal. Apr. 10, 2017) ("courts have held that discovery of a defendant's marketing and labeling decisions are relevant in a consumer class action dispute. *See id.* (decisions may be relevant to defendant's "intent, motive, and knowledge").

## Advertising (Topics 7–11)

Target has agreed to designate a witness on these topics.

## Packaging / Labeling (Topics 12–15)

As the Good & Gather brand owner, Target surely controls the claims that appear on the front labels of its Products' packaging, reviews and approves artwork, and maintains approval workflows, version histories, and legal/regulatory sign-offs. A properly prepared designee can testify to the Products' labels and packaging over time (what versions existed, when they were used, and where), the drafts and iterations (mock-ups/dielines, what was proposed or changed, and why), who at Target approved or changed them (brand, design, compliance, legal, or outside

---

[5] Confidentiality should not be a concern given the Parties' Stipulated Protective Order. ECF No. 36.

September 30, 2025
Page 4 of 6

agencies), and the dates and reasons for each change as shown in Target's change logs and approval records.

To the extent granular details and information is with a vendor, we understand but Target should still provide corporate-level testimony about its role and involvement—from placing the order with the vendor through the product reaching store shelves.

## Product Retailers & Unit Counts (Topics 16–17)

The Products are Target-brand products sold through Target's own stores and platforms. Surely, Target knows if the Products are sold through any other retailers or third-party channels/ distributors. In addition, unit sales and gross sales by retailer are standard and should be readily available through invoices/POS reports. *Herbalife Int'l of Am., Inc. v. Kamel*, No. CV 21-6982 MWF (PVCx)) 2023 U.S. Dist. LEXIS 130800, at *13 (C.D. Cal. July 20, 2023) (holding "information and documents related to Defendant's sale and resale of [the challenged products]" "are clearly related" to Plaintiff's claims of unfair competition and fraud).

## Sales, Revenues, Recordkeeping (Topics 18–23)

These topics go to the heart of class certification, damages, restitution, and injunctive relief. *See, e.g., Hawkins v. Kroger Co.*, 2020 U.S. Dist. LEXIS 72311, at *50 (S.D. Cal. Apr. 23, 2020) (granting motion to compel response to discovery regarding sales data of the product at issue during the class period for CLRA and UCL claims); *In re: Coca-Cola Prod. Mktg. & Sales Practices Litig.*, 2016 U.S. Dist. LEXIS 148534, *28 (N.D. Cal. Oct. 26, 2016) ("effects of the disputed labeling claims on sales, revenues, profits, and pricing information [are] relevant to the class certification damages inquiry.")

Target necessarily tracks California unit sales, SKU/UPC-level revenue, and pricing through its POS/e-commerce platforms and ERP/accounting systems (invoice-level data, sales reports, and revenue-recognition schemas). Limiting testimony to "recordkeeping practices for marketing materials" is not responsive. We need a prepared Rule 30(b)(6) witness who can speak to: (i) California units sold by Product and channel, and approximate average price (Topic 18); (ii) total dollar sales in California and product-level breakdowns (Topic 19); (iii) California revenues attributable to the Products (Topic 20); (iv) Target's revenue-recording methodology (Topic 21); (v) the systems and fields in which sales/accounting data are kept (invoice/POS extracts, data warehouses) and how they can be queried (Topic 22); and (vi) any profitability analyses/forecasts for the Products (Topic 23). Target has already demonstrated access to these data when it relied on Product sales figures to remove this case to federal court.

If certain granular details require consultation with other executives such as finance/merchandising, please identify those individuals in those departments so we can promptly notice a 30(b)(1) deposition.

September 30, 2025
Page 5 of 6

**Product Pricing (Topic 24)**

Target has agreed to designate a witness on this topic.

**Consumers of the Product (Topics 25–31)**

Target runs robust customer-data systems for its owned brands—loyalty (e.g., Target Circle/RedCard), e-commerce and app purchases, CRM/SDK integrations, customer-care and complaint databases, returns/exchanges, and recall-notification tools that Target uses to contact known purchasers by phone, email, and in-app. A properly prepared 30(b)(6) witness should be able to explain (i) how Target can identify California purchasers, including what contact and purchase data are captured through online orders, loyalty-linked receipts, and promotions; and (ii) what platforms and data pipelines exist (CRM, SDKs, data warehouses) and how they can be queried to locate purchasers. *See, Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal. 4th 360 ("Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case…")

If Target maintains that it cannot reasonably identify consumers, the designee should say so on the record and describe what records do exist—such as online order histories, loyalty-linked purchases, complaint/return logs, and survey datasets—and why those sources cannot be used. To the extent privacy or confidentiality is a concern, we are amenable to handling sensitive data under a jointly stipulated protective order.

**Insurance (Topic 33)**

Any insurance policies and claims related to Plaintiff's claims are within Target's knowledge, custody, possession or control.

**Next Steps**

Please confirm by **October 7, 2025** that Target will designate and adequately prepare one or more 30(b)(6) witnesses on the full scope of Plaintiff's notice, as outlined above. If Target maintains objections, identify topic-by-topic what information is allegedly unavailable and why, so we can confer meaningfully.

///

///

///

///

Malk & Pogo Law Group, LLP   |   1241 S. Glendale Ave, Suite 204 Glendale, CA 91205   |   P: (818) 484-5204

September 30, 2025
Page 6 of 6

We hope to resolve this matter without court intervention, but we will take appropriate action if necessary.

Sincerely,

**MALK & POGO LAW GROUP, LLP**
*/s/ Valter Malkhasyan*
Valter Malkhasyan, Esq.
*valter@malkpogolaw.com*