Daniel Lammie (Bar No. 345838)
HAYNES AND BOONE, LLP
112 East Pecan Street, Suite 2400
San Antonio, TX 78205
Telephone: (210) 978-7000
Facsimile: (210) 978-7450
Daniel.lammie@haynesboone.com

Letitia Johnson-Smith (Bar No. 355642)
HAYNES AND BOONE, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Telephone: (949) 202-3000
Facsimile: (949) 202-3001
Letitia.johnson-smith@haynesboone.com

Brent R. Owen (Bar No. 45068)
Allison Regan (Bar No. 61960)
HAYNES AND BOONE, LLP
675 15th Street, Suite 2200
Denver, CO 80202
T: (303) 382-6200
F: (303) 382-6210
Brent.owen@haynesboone.com
Allison.Regan@haynesboone.com
[PRO HAC VICE]

Attorneys for Defendant
TARGET CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIGEN TOVMASYAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION, a corporation, and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-02314-MRA-KS<br><br>Assigned to District Judge:<br>Hon. Monica Ramirez Almadani<br><br>**DEFENDANT TARGET CORPORATION'S OPPOSITION TO EX PARTE APPLICATION RE PLAINTIFF'S FIRST REQUEST TO AMEND THE SCHEDULING ORDER** |

DEFENDANT TARGET CORPORATION'S OPPOSITION TO EX PARTE APPLICATION
RE PLAINTIFF'S FIRST REQUEST TO AMEND THE SCHEDULING ORDER
Case No.: 2:25-cv-02314-MRA-KS

**TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................................1

II.   ARGUMENT ......................................................................................................................1

    A.  No exigent circumstances exist to justify the ex parte application........................1

    B.  This Court should deny Plaintiff's Motion to Amend the Scheduling Order.......5

       1. Good cause to amend the scheduling order at this late juncture does not exist 5

       2. 30(b)(6) Deposition of Defendant ...................................................................8

       3. Prejudice to Defendant ...................................................................................11

III.  CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Ammons v. Diversified Adjustment Serv., Inc.*,
   No. 218CV06489ODWMAAX, 2019 WL 2303831 (C.D. Cal.
   May 30, 2019)......................................................................................................7

*B&G Foods N. Am., Inc. v. Embry*,
   No. 2:20-CV-00526-KJM-SCR, 2024 WL 4262412 (E.D. Cal.
   Sept. 20, 2024)......................................................................................................3

*Est. of Goldberg v. Goss-Jewett Co., Inc.*,
   No. EDCV1401872DSFAFMX, 2016 WL 7471427 (C.D. Cal.
   Feb. 19, 2016)......................................................................................................9

*Hendricks v. Aetna Life Ins. Co.*,
   No. 2:19-CV-06840-AB(MAAX), 2024 WL 4720802 (C.D. Cal.
   Sept. 3, 2024)......................................................................................................9

*Israel v. Moreno*,
   No. 2:23-CV-02383-JGB (SK), 2024 WL 4720801 (C.D. Cal.
   Sept. 10, 2024)......................................................................................................7

*Jenkins v. City of Los Angeles*,
   No. 2:24-CV-01056 MWC, 2025 WL 2019789 (C.D. Cal. Jan. 6,
   2025) ("Ex parte applications are 'rarely justified' and will only
   be entertained by the Court for extraordinary situations")................................1

*Kargar v. BMW of N. Am., LLC*,
   No. 22-CV-03047-SPG (KSX), 2024 WL 454991 (C.D. Cal. Jan.
   8, 2024)......................................................................................................4

*Lawrence v. Broadus*,
   No. 2:24-CV-05947-MCS-JPR, 2025 WL 1421282 (C.D. Cal.
   Apr. 10, 2025)......................................................................................................1

*Lockheed Martin Corp. v. Network Sols., Inc.*,
   194 F.3d 980 (9th Cir. 1999)................................................................................11

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995)................................................................2, 5

- 1 -

*Nevels v. Avalos*,
No. CV 17-06434-JVS (AS), 2020 WL 6712251 (C.D. Cal. May 5, 2020)..............................................................................................................7

*Orange Cnty. Coastkeeper v. R.J. Noble Co.*,
No. 821CV01233FWSDFM, 2022 WL 3013156 (C.D. Cal. June 30, 2022)...........................................................................................................11

*Orogem Corp. v. De Beers Societe Anonyme*,
No. CV 9-9014-JFW (SHX), 2010 WL 11549347 (C.D. Cal. Dec. 10, 2010)...........................................................................................................6

*Romex Textiles, Inc. v. HK World, LLC.*,
No. CV186543RSWLAGRX, 2019 WL 8163476 (C.D. Cal. Oct. 18, 2019)........................................................................................................9, 10

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
No. CV 18-06825-GW-(RAOX), 2020 WL 8102054 (C.D. Cal. July 9, 2020) ..........................................................................................................3

*Savage v. City of Whittier*,
No. 221CV08067VAPPDX, 2023 WL 6787446 (C.D. Cal. June 28, 2023)...........................................................................................................1

*Thompson v. BMW of N. Am., LLC*,
334 F.R.D. 230 (C.D. Cal. 2020) .............................................................5, 11

*Yellow Rose Prods., Inc. v. Pandora Media, LLC*,
No. 2:22-CV-809-MCS-MAR, 2024 WL 1832424 (C.D. Cal. Apr. 12, 2024).........................................................................................................9, 11

**Other Authorities**

F.R.C.P. 16(b)(4) .................................................................................................5

F.R.C.P. 30(b)(6) .............................................................................................3, 9

TABLE OF AUTHORITIES
Case No.: 2:25-cv-02314-MRA-KS

Defendant Target Corporation ("<u>Defendant</u>" or "<u>Target</u>") hereby respectfully submits the following points and authorities in opposition to Plaintiff Vigen Tovmasyan ("<u>Plaintiff</u>") ex parte application to amend the scheduling order.

## I.    **INTRODUCTION**

As of December 2025, when Plaintiff noticed the continued 30(b)(6) deposition of Defendant and a non-party manufacturer for February (less than a month prior to the non-expert discovery cutoff), Plaintiff was or should have been aware of his claimed need to amend the scheduling order. But rather than diligently seek such amendment at that time, Plaintiff waited until two weeks before the non-expert discovery cutoff, realized the motion would not be heard in the regular course, and opted to seek improper ex parte relief to overcome his lack of diligence. Because no exigent circumstances justify the ex parte application and no good cause exists to amend the scheduling order, the application must be denied.

## II.    **ARGUMENT**

### A. <u>No exigent circumstances exist to justify the ex parte application</u>

Ex parte applications are solely for extraordinary relief. *Savage v. City of Whittier*, No. 221CV08067VAPPDX, 2023 WL 6787446, at *2 (C.D. Cal. June 28, 2023); *see also Jenkins v. City of Los Angeles*, No. 2:24-CV-01056 MWC (AJRX), 2025 WL 2019789, at *1 (C.D. Cal. Jan. 6, 2025) ("Ex parte applications are 'rarely justified' and will only be entertained by the Court for extraordinary situations"). Accordingly, an ex parte applicant must show it "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and that the moving party "is without fault in creating the crisis that requires ex parte relief." *Savage*, 2023 WL 6787446, at *2; *see Lawrence v. Broadus,* No. 2:24-CV-05947-MCS-JPR, 2025 WL 1421282, at *1 (C.D. Cal. Apr. 10, 2025) (finding no cause for ex parte relief sought by plaintiff where plaintiff could have or should have known of the need to amend the complaint earlier). The purpose of the first part of the ex parte motion papers is to establish why the accompanying proposed

- 1 -

motion for the ultimate relief requested cannot be calendared in the usual manner. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). In other words, it must show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment. *Id.* Plaintiff misstates the procedural history and misconstrues the law to incorrectly seek special treatment.

First, Plaintiff contends that the scheduling of Defendant's 30(b)(6) deposition provides a basis for Plaintiff to skip the line. Not so. True, Plaintiff initially noticed the deposition of Defendant's corporate representative on July 28, 2025. (*See* Allison Regan Declaration ["Regan Decl."] ¶ 2; Ex. A.) The Notice of Deposition ("Notice") set the 30(b)(6) deposition for October 1, 2025, to accommodate Plaintiff's counsel's four-week vacation in late August and early September. (*See id.* at ¶ 3; Ex. B.) Due to scheduling conflicts, the October 1, 2025 date was not workable; counsel for the parties corresponded regularly throughout September and October to schedule Defendant's corporate representative deposition (and the deposition of Plaintiff) on mutually agreeable dates. (*See id.* at Decl. ¶ 4.) Ultimately, Defendant's corporate representative deposition was scheduled for and proceeded on December 3, 2025. (*See* Regan Decl. ¶ 5; Ex. C.) Counsel for Defendant notified counsel for Plaintiff that the deponent—who is located in Minnesota—would need to stop by 3:45 p.m. central time and offered to begin the deposition earlier and/or to make the deponent available on an alternate date or an additional date, if needed. (*See id.* at ¶ 8; Ex. G.) At Plaintiff's request, the parties agreed to begin the deposition an hour earlier, at 8:30 a.m. Pacific Time. (*See id.*) Plaintiff was unable to complete the deposition on December 3, 2025 due to time constraints. (*See id.* at ¶ 10; Ex. I.) However, at no time did Plaintiff suspend the 30(b)(6) deposition due to unpreparedness of the witness, as he now suggests was the case.

Following the initial 30(b)(6) deposition of Defendant, on December 10, 2025, Plaintiff noticed the continued deposition for February 10, 2026, and specifically demanded Defendant produce an individual from Defendant's product development team. (*See* Regan Decl. ¶ 9; Ex. I.) Contrary to Plaintiff's representation in its application, Defendant obliged Plaintiff's request, and agreed to produce the specifically requested deponent, and the parties agreed to reschedule the deposition for February 24, 2026, to accommodate scheduling conflicts. (*See id.* at ¶¶ 11, 20; Exs. K, Q.) Though Defendant disputes that the original deponent was unprepared, Defendant has satisfied its duties under 30(b)(6) by designating another deponent who was specifically requested by Plaintiff. *See B&G Foods N. Am., Inc. v. Embry,* No. 2:20-CV-00526-KJM-SCR, 2024 WL 4262412, at *3 (E.D. Cal. Sept. 20, 2024) ("[A] designating party should designate another Rule 30(b)(6) witness when its originally designated witness is unprepared to provide meaningful testimony."); *see also Santa Clarita Valley Water Agency v. Whittaker Corp.,* No. CV 18-06825-GW-(RAOX), 2020 WL 8102054, at *8 (C.D. Cal. July 9, 2020) (F.R.C.P. 30(b)(6) "does not require 'absolute perfection in preparation.'").

Second, and relatedly, Plaintiff contends that the preparedness of the witness provides a basis for Plaintiff to forego regular motion procedures. Again, not so. In December, the parties agreed to resume Defendant's 30(b)(6) deposition with a different deponent—one specifically requested by Plaintiff—a member of Target's product development team. (*See* Regan Decl. ¶¶ 10, 12; Exs. H, I.) It was Plaintiff who opted to notice the resumed 30(b)(6) deposition for February 10, 2026—less than a month before the non-expert discovery cutoff of March 6, 2026. Plaintiff issued that Notice on December 10, 2025. (*See id.* at ¶ 8; Ex. H.)

Third, Plaintiff suggests that outstanding documents necessitate an ex parte motion. Though Defendant's 30(b)(6) deposition began on December 3, 2025, Plaintiff did not serve document requests on Defendant for documents identified during the deposition until **two months** later, on February 5, 2026, making

- 3 -

Defendant's deadline to respond after the close of non-expert discovery. *See Kargar v. BMW of N. Am., LLC,* No. 22-CV-03047-SPG (KSX), 2024 WL 454991, at *4 (C.D. Cal. Jan. 8, 2024) (denying ex parte application to compel completion of a 30(b)(6) deposition because "Plaintiff did not move expeditiously" to seek relief from the discovery cut off deadline). And it was only after counsel for Defendant notified Plaintiff of the late-served discovery setting Defendant's response deadline beyond the non-expert discovery cutoff, during an unrelated conferral call on February 12, 2026, that Defendant requested the 60-day extension to the discovery cutoff deadline. (*See* Regan Decl. ¶¶ 14-15; Ex. L.)

In short, Plaintiff's counsel has been aware since at least December 10, 2025 that the resumed 30(b)(6) deposition of Defendant would not occur until, at the earliest, February 10, 2026 (the date initially noticed by Plaintiff) and was aware as of December that additional discovery may be necessary following the 30(b)(6) deposition.  Courts are clear that this is not a basis for ex parte.  For example, in *Skupen v. Target Corp.*, the court denied an ex parte application to modify a scheduling order where the movant's sole justification was insufficient time to bring a regularly-noticed motion. No. CV 17-3175-GW(EX), 2018 WL 11473927, at *2 (C.D. Cal. Jan. 12, 2018). The court found this argument evidenced a lack of diligence, as the party tacitly admitted it had failed to seek modification months earlier when it became apparent the parties would disregard the scheduling order. Emphasizing that "[a] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril," the court warned that such disregard "would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Id.*

Similarly, here, Plaintiff was or should have been aware, two months ago, that an extension of the non-expert discovery cutoff may be necessary. Nonetheless, Plaintiff waited until two weeks before the non-expert discovery cutoff, discovered

- 4 -

that the regular hearing schedule would not allow the opposed motion to amend to be heard in the regular course before March 6, 2026, and improperly resorted to an ex parte application. (*See* Regan Decl. ¶¶ 13-15; Ex. L.) As this Court has recognized, "filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire." *Mission Power Eng'g Co. v. Cont'l Cas. Co.,* 883 F. Supp. 488, 492 (C.D. Cal. 1995). If there is a fire here, it is one of Plaintiff's own making. The ex parte application should be denied outright.

## B. This Court should deny Plaintiff's Motion to Amend the Scheduling Order

Should this court deem exigent circumstances justify the ex parte application (it should not), Plaintiff's Motion to Amend must be denied as no good cause exists to amend the scheduling order.

### 1. Good cause to amend the scheduling order at this late juncture does not exist

Once a scheduling order has been entered, it may not be modified except upon a showing of  "good cause" and by leave of the Court. F.R.C.P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Thompson v. BMW of N. Am., LLC,* 334 F.R.D. 230, 233 (C.D. Cal. 2020). To demonstrate diligence, the moving party is required to show:

> (1) that it was diligent in assisting the Court in creating a workable Rule 16 scheduling order; (2) that its noncompliance with the scheduling order's deadline occurred or will occur notwithstanding diligent efforts to comply because of 'the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference;' and (3) that it was diligent in seeking amendment of the scheduling order once it became apparent it could not comply with the order.

- 5 -

*Orogem Corp. v. De Beers Societe Anonyme,* No. CV 9-9014-JFW (SHX), 2010 WL 11549347, at *1 (C.D. Cal. Dec. 10, 2010). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* "If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Id.*

As set forth above, Plaintiff has not exhibited diligence during the non-expert discovery period. Again in his good cause argument, Plaintiff regales this Court with a selective history of discovery in this matter, highlighting Plaintiff's earliest discovery efforts (serving discovery requests in May 2025), scheduling issues with Defendant's 30(b)(6) deposition in December and continued deposition, which has been scheduled for next week, February 24, 2026, and the latest discovery efforts (attempting to depose two non-party manufacturers by noticing depositions in the four weeks prior to the non-expert discovery cutoff). What Plaintiff brushes past— and what is critical to this court's evaluation of good cause—are Plaintiff's undue delays in his discovery efforts.

First, a discussed *supra,* the initial deposition of Defendant's corporate representative was scheduled in December to accommodate scheduling conflicts of both parties, including a lengthy vacation of Plaintiff's counsel. (*See* Regan Decl. ¶¶ 2-4; Exs. A-B.) Second, and relatedly, Plaintiff noticed the resumed 30(b)(6) deposition of Defendant on December 10, for February 10, 2026 (*two months later* and *less than one month* prior to the non-expert discovery cutoff), and demanded Defendant produce a particular individual, which Defendant accommodated. The resumed 20(b)(6) deposition of Defendant will occur next week, on February 24, 2026. (*See* Regan Decl. ¶¶ 5-11, 20; Exs. H-I, Q.)

Third, Plaintiff served requests for production of documents on February 5, 2026, seeking documents which Defendant's initial corporate designee, Ms. Jacobson, testified regarding during her deposition *two months prior* in December.

- 6 -

(*See* Regan Decl. ¶¶ 11, 16; Ex. J, M.) The service of these document requests two months after Defendant's 30(b)(6) deposition on February 5, 2026 mean that Defendant's deadline to respond is *after* the non-expert discovery cutoff. *Israel v. Moreno*, No. 2:23-CV-02383-JGB (SK), 2024 WL 4720801, at *1 (C.D. Cal. Sept. 10, 2024) (discovery requests "cannot be served with less than 30 days to respond before the court-ordered fact discovery cutoff."); *Nevels v. Avalos*, No. CV 17-06434-JVS (AS), 2020 WL 6712251, at *2 (C.D. Cal. May 5, 2020) (denying motion to compel production of documents where "Plaintiff's requests for production were untimely, and Defendants properly refused to respond on that basis" and holding plaintiff failed to establish good cause for the delay in serving discovery requests); *Ammons v. Diversified Adjustment Serv., Inc.*, No. 218CV06489ODWMAAX, 2019 WL 2303831, at *2 (C.D. Cal. May 30, 2019) (denying a motion to amend the scheduling order for lack of good cause where movant's basis for amendment was new information learned at a deposition but where movant delayed in bringing motion to amend on that basis).

Fourth, Plaintiff noticed the depositions of Defendant's two manufacturers of the products at issue in this matter for February 3, 2026 and February 25, 2026. (*See* Regan Decl. ¶¶ 17-18; Exs. N-O.) Defendant facilitated and accepted service of both non-party deposition notices and subpoenas. The first manufacturer deposition occurred on February 3, 2026, as originally noticed by Plaintiff. The second was noticed for February 25, 2026; though Plaintiff represents that Defendant has not confirmed a date for the second non-party manufacturer deposition, counsel for Defendant notified counsel for Plaintiff on February 12, 2026, that the two likely designated deponents were unavailable on February 25, 2026 and requested an alternate date the following week. (*See* Regan Decl. ¶¶ 19; Ex. P.)

Finally, Plaintiff was not diligent in seeking an amendment to the scheduling order, as set forth above. Plaintiff chose to notice the continued 30(b)(6) deposition

DEFENDANT TARGET CORPORATION'S OPPOSITION TO EX PARTE APPLICATION RE PLAINTIFF'S FIRST REQUEST TO AMEND THE SCHEDULING ORDER
Case No.: 2:25-cv-02314-MRA-KS

of Defendant, as well as the 30(b)(6) depositions of non-parties to occur during month of February, less than a month prior to the non-expert discovery cutoff. (*See* Regan Decl. ¶¶ 8, 17-18; Exs. H, N-O.) Despite noticing the continued 30(b)(6) deposition of Defendant and one manufacturer in December for February, Plaintiff did not seek an amendment to the scheduling order ***until two weeks before the non-expert discovery cutoff***. (*See* Regan Decl. ¶¶ 13-14; Ex. L.) Similarly, Plaintiff chose to serve requests for production of documents two months (February 5, 2026) after the 30(b)(6) deposition of Defendant in December, during which Plaintiff learned of such documents, without enough time for Defendant to respond within the non-expert discovery period. (*See id.*; *see also* Ex. M.) This lack of diligence forecloses a finding of good cause to amend the scheduling order.

### 2. 30(b)(6) Deposition of Defendant

Plaintiff spends much of his application claiming Defendant's designated 30(b)(6) deponent, Ms. Jacobson, was unprepared to testify as a corporate representative for Defendant. Though the determination of good cause to amend a scheduling order hinges on the diligence of the party seeking amendment, Plaintiff's claims regarding preparedness necessitates a response. Tellingly, Plaintiff does not actually seek a discovery sanction.

Plaintiff noticed an astounding forty-five topics for the 30(b)(6) deposition of Defendant, divided into nine different categories ranging from sales data, to insurance, to technical specifications of the products at issue. (*See* Regan Decl. ¶¶ 2, 5, 8; Exs. A, C, H.) Accordingly, counsel for Defendants met with the designated deponent, Ms. Jacobson, four times over a period of five weeks and Ms. Jacobson reviewed numerous documents produced by Defendant in this litigation in preparation to provide testimony. (*See id.* at ¶ 10; Ex. K (Tr. 10:19-11:15).) Ms. Jacobson is a senior scientist on Target's food safety and regulatory team, within the compliance and labeling function. (*See id.*; Ex. J (Tr. 11:18-23).) In this lawsuit, Plaintiff challenges representations on the labeling of the products at issue. Part of

- 8 -

Ms. Jacobson's duties include involvement with Target's "specification and labeling of [] current products" including the Good & Gather product line, some of which are at issue in this litigation. (*See* Regan Decl. ¶ 11; Ex. J (Tr. 12:16-25).) Ms. Jacobson's core duties also include "review[ing] content that the vendor provides [] that ultimately goes on the label." (*See id.*; Ex. J (Tr. 14:12-16).) An organization's duty under Rule 30(b)(6) requires "a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Romex Textiles, Inc. v. HK World, LLC.*, No. CV186543RSWLAGRX, 2019 WL 8163476, at *7 (C.D. Cal. Oct. 18, 2019); *Yellow Rose Prods., Inc. v. Pandora Media, LLC*, No. 2:22-CV-809-MCS-MAR, 2024 WL 1832424, at *2 (C.D. Cal. Apr. 12, 2024) ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything."). Defendant did just that.

Plaintiff appears to take issue—without identifying the specific noticed topics about which he contends Ms. Jacobson was unprepared—with Ms. Jacobson's testimony about certain aspects of product development and verification that are handled by Target's product development team or by the non-party manufacturers/vendors of the products. (*See* Plaintiff's Declaration in Support of Ex Parte ["Pl. Decl."] ¶ 11.) Plaintiff's position is contrary to established jurisprudence. Indeed, "the deponent need only be prepared to the extent information is reasonably available. Obviously, a rule of reason applies." *See Romex Textiles*, 2019 WL 8163476, at *7 (cleaned up); *Est. of Goldberg v. Goss-Jewett Co., Inc.*, No. EDCV1401872DSFAFMX, 2016 WL 7471427, at *12 (C.D. Cal. Feb. 19, 2016) ("[T]here is not a fixed list of tasks that a Rule 30(b)(6) witness must perform to be adequately prepared. The specific circumstances of the case and the topics of testimony determine how much and what preparation is adequate."); *Hendricks v. Aetna Life Ins. Co.*, No. 2:19-CV-06840-AB(MAAX), 2024 WL

- 9 -

4720802, at *12 (C.D. Cal. Sept. 3, 2024) ("[A] deposing party may not demand that a corporate designee be prepared to speak with encyclopedic authority.").

To the extent Ms. Jacobson testified that she did not know certain technical information related to the product formulations, manufacturing process, or amounts of ingredients, the rule of reason must apply. *See Romex Textiles*, 2019 WL 8163476, at *7. Rather than being an indication of lack of preparation of the deponent, (*cf.* Pl. Decl. ¶ 11), Ms. Jacobson testified regarding the extent of Target's knowledge as to the amounts of each ingredient in the products and testified that only the vendor/manufacturer knows the exact percentage of each ingredient. (*See id.*) Defendant does not possess that information because such information constitutes the proprietary business and trade secret information of its vendors and/or manufacturers. And Defendant notified Plaintiff in the fall of 2025 that the manufacturers of the products, rather than the Defendant, would possess information relating technical aspects of the products' formulation, manufacturing, and ingredients and that Defendant would not possess such proprietary business information of the manufacturers. (*See* Regan Decl. ¶¶ 5-6; Ex. D-F.)

If Plaintiff takes issue with Ms. Jacobson's testimony regarding the function of Target's product development team, Ms. Jacobson was not unprepared. In fact, she described Target's verification process for products, including the product development team's role. (*See, e.g.*, Regan Decl. ¶ 11; Ex. J (Tr. 42:14-19) ["When the specification is turned over to my team, the product development team has already worked with our vendor to review this product to make sure that is meets requirements that the project plan for the desired outcomes that we were hoping to get from this project had been met."]). "[T]he deponent **need not** be prepared to answer questions about ***any potentially relevant fact known by any employee of a corporation.*** *Romex Textiles*, 2019 WL 8163476, at *7 (citing *Banks v. Off. of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 373-375 (D.D.C. 2007) (emphasis added). Plaintiff points to Ms. Jacobson's testimony at page 60 of the transcript as

- 10 -

another purported example of unpreparedness. (*See* Pl. Decl. ¶ 10(ii).) However, Ms. Jacobson provides examples of ingredients not permitted in the Good & Gather line of products and testifies that the product development team determines permissible ingredients. Corporate representative depositions are not memory tests, *see Yellow Rose Prods.,* 2024 WL 1832424, at *2, and Ms. Jacobson's testimony evidences her knowledge of allegedly prohibited ingredients for the product line at issue, as well as her knowledge of Target's internal division of responsibilities between departments.

Even if Plaintiff were correct (he is not) that Ms. Jacobson was unprepared (she was not), Defendant has obliged Plaintiff's request to continue Defendant's 30(b)(6) deposition with a new deponent, specifically an individual on Target's product development team. (*See* Regan Decl. ¶¶ 9, 11; Exs. H, K.) That Plaintiff chose to notice the continued deposition less than a month prior to the non-expert discovery cutoff and failed to exercise diligence in seeking an amendment to the scheduling order when noticing the continued deposition is not good cause to amend the scheduling order.

### 3. Prejudice to Defendant

Plaintiff claims Defendant will suffer no prejudice if the 60-day extension sought is granted. At the outset, Defendant notes that Plaintiff's failure to establish good cause, due to his own lack of diligence, is generally dispositive to a motion to amend. Indeed, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Thompson,* 334 F.R.D. at 233. Nonetheless, an extension of the non-expert discovery cutoff and other deadlines will prejudice Defendant as it will delay the ultimate trial date of this matter further. *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice."); *Orange Cnty. Coastkeeper v. R.J.*

- 11 -

*Noble Co.*, No. 821CV01233FWSDFM, 2022 WL 3013156, at \*3 (C.D. Cal. June 30, 2022) (finding "the additional expenditures of effort and resources associated with a delay in the proceedings" supports a finding of prejudice). Indeed, Plaintiff seeks to extend, by sixty days, the non-expert discovery cut-off, the expert class certification discovery cut-off, initial and rebuttal expert disclosure deadlines, the motion for class certification deadline, and the expert discovery cutoff deadline. However, Plaintiff fails to address that shifting these deadlines by sixty days will necessitate a shift in the other, remaining deadlines as well. In other words, Plaintiff seeks to shift the entire schedule of this case back by two months—a delay which prejudices Defendant.

## III.   CONCLUSION

Plaintiff's ex parte application is improper and should be denied outright. Even if this court were to consider Plaintiff's underlying request to amend the scheduling order, Plaintiff's lack of diligence forecloses a finding of good cause to amend the scheduling order. The application and motion should be denied.

Date:  February 20, 2026                    HAYNES AND BOONE, LLP

By:  _____
          Allison K. Regan
          Attorneys for Defendant
          TARGET CORPORATION

- 12 -